Helen DAUGHERTY,
Plaintiff/Appellant,

v.

R.L. DAUGHERTY, Executor, et al.,
Defendants/Appellees.

R.L. DAUGHERTY, Plaintiff/Appellee,

v.

Sharon Grizzle WALLACE, et al.,
Defendants/Appellees.

Supreme Court of Tennessee,
at Knoxville.

Feb. 5, 1990.

George H. Buxton, III, Robert W. Wilkinson, Oak Ridge, for Helen Daugherty.

Robert S. Marquis, Knoxville, for Heirs Chester Daugherty.

Elbert M. Cooper, Jr., Clinton, for unknown, unborn Heirs.

J. Polk Cooley, Pat Fritts, Rockwood, for R.L. Daugherty Individually.

Joe E. Magill, Clinton, for R.L. Daugherty, et al.

Donald B. Roe, Oak Ridge, for estate.

## OPINION

O'BRIEN, Justice.

This case originated in the Chancery Court for Anderson County as a declaratory judgment action filed by the plaintiff Helen Daugherty to determine her rights under the last will and testamentary trust of John Ramsey Daugherty. The defendant, R.L. Daugherty, executor and trustee under the will responded. Plaintiff and defendant each filed motions for summary judgment on the sole issue of whether Helen Daugherty was an heir under the will. The chancellor entered a judgment granting the motion for summary judgment filed by the plaintiff and denying the motion filed by the defendant. He decreed that Helen Daugherty was entitled to all of the interest her deceased husband, Leo Daugherty, would have inherited from the estate of John Ramsey Daugherty. The decision of the trial court was taken to the Court of Appeals which vacated the summary judgment and remanded for the purpose of making all claimants to the estate of J.R. Daugherty parties to the proceeding.

R.L. Daugherty as beneficiary, executor and trustee of the will of John Ramsey Daugherty then filed a complaint for declaratory judgment naming as defendants the grandchildren of John Ramsey Daugherty and other unknown heirs at law. The complaint requested the court to construe the will of John Ramsey Daugherty to the effect that the estate ultimately vested in Chester Daugherty and R.L. Daugherty and their heirs at law or in the alternative that the will violated the rule against perpetuities.

On 27 March 1987 the chancellor heard each of the declaratory judgment actions separately on stipulated exhibits and argument of counsel. He entered identical judgments in each case. He found that the effect of the will of J.R. Daugherty was to leave the estate to his three sons. Upon

the prior death of one of the sons the estate left to that son became vested in his then surviving heirs. He found that Helen Daugherty was the sole surviving heir of her deceased husband, Leo Daugherty, one of the beneficiaries under the will. He held that because there was no provision made in the will beyond the surviving heirs that the gift to them was a gift in fee simple and Helen Daugherty was entitled to one-third (⅓) of the estate in fee.

The cases were consolidated for appeal purposes. Appeals were taken on behalf of R.L. Daugherty, the heirs of Chester Daugherty, and by the guardian ad litem for the unknown heirs of R.L. Daugherty and Chester Daugherty. The Court of Appeals disagreed with the trial court, holding that the testator created or attempted to create successive trusts, initially for the benefit of his sons, and upon their respective deaths, for their heirs, with no termination or further disposition. They held that the will of J.R. Daugherty violated the rule against perpetuities and was therefore void.

An application for permission to appeal to this Court was filed by Helen Daugherty. The only issue presented was whether the Court of Appeals erred in holding that the last will and testamentary trust of J.R. Daugherty violated the rule against perpetuities. That application was granted. The case is now before this Court for disposition.

The appellant, Helen Daugherty, takes the position that the rule against perpetuities is a rule invalidating interests which vest too remotely and is not a rule invalidating interests which vest but may not become possessory until beyond the period of perpetuities. Thus, she says, each of J.R. Daugherty's three sons had an interest for life in one-third of his estate followed by a remainder interest in their "surviving heirs," although the gift was in trust with unspecified terms. When Leo Daugherty predeceased his father, the remaining interest in Leo's "surviving heirs" accelerated and became an immediate beneficial interest in his heirs determined as if Leo died at the time of or subsequent to the death of

J.R. Daugherty. It is insisted that in accordance with T.C.A. § 31–1–101(5) the word "heirs" includes Helen Daugherty, as Leo Daugherty's spouse, just as if he had died intestate. The one-third interest in the estate vested in the heirs of each of J.R. Daugherty's sons upon the occurrence of his death (in Leo's case) or the son's death (in the case of Chester and R.L.).

The appellees, on the other hand, insist that the result of the chancellor's ruling was to rewrite the will of Mr. Daugherty to avoid the rule against perpetuities. That it is the duty of the court to construe the will without regard to the rule, then to apply it vigorously without regard to the testator's intent, citing *Marks v. Southern Trust Co.,* 203 Tenn. 200, 310 S.W.2d 435, 437 (1958). They say if the testator did not see fit to dispose of the corpus of the trust he created, it is not the role of the court to do so for him and applying the rule against perpetuities will effectuate the intent of the testator in this case.

The classic definition of Gray's Rule against Perpetuity is set out in *Marks v. Southern Trust Co.,* supra, 310 S.W.2d at p. 441:

"No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest."

The immediate issue we have before us is created by the second and sixth numbered paragraphs of J.R. Daugherty's will. These sections of the will provide as follows:

"SECOND: I desire and direct that all of my estate which I may own at my death, real, personal and mixed, tangible and intangible, of whatever kind and character and wherever situated, including all property I may acquire or become entitled to after the execution of this will, including all lapsed legacies and devises be placed in and held in trust for my three sons, Leo Daugherty, Chester Daugherty and R.L. Daugherty of Anderson County, Tennessee.

SIXTH: At the time of the death of any one of my sons, Leo Daugherty, Chester

Daugherty and R.L. Daugherty, I direct that each of their one-third of my estate be held in trust by a Trustee properly appointed and bonded, one-third of my estate for Leo Daugherty's surviving heirs, one-third of my estate for Chester Daugherty's surviving heirs, one-third of my estate for R.L. Daugherty's surviving heirs."

John Ramsey Daugherty executed his will and testamentary trust on 23 August 1969. He died on 9 December 1985. He had three children, Leo, Chester and R.L. Daugherty. Leo Daugherty predeceased his father on 26 August 1981, leaving a wife, Helen, but no surviving children. Chester and R.L. Daugherty survived their father. Chester died on 16 February 1986 leaving a wife and five children. R.L. Daugherty has a wife and five children.

The first question to be investigated is whether the disposition of the remainder interest by Item 6 of the will violates the rule against perpetuities. We disagree with the conclusion reached by the Court of Appeals that this provision resulted in a violation of the rule. That court held that the testator created or attempted to create successive trusts, initially for the benefit of his sons, and upon their respective deaths, for their heirs, with no termination or further disposition. They went on to hold that title did not vest within the limiting period of the rule against perpetuities. They say there was no vesting of interest because the testator devised his estate in trust to his sons and upon their deaths again in trust to their heirs, with no provision for termination and disposition of the corpus of each trust.

It is plain from the direction of the will that the testator first created a trust for the use and benefit of his three sons with the income therefrom to be divided equally among them. There was a further provision that if they were in need of additional funds for themselves or for explicit business purposes they could encroach on the principal estate by agreement of the three of them. The testator provided with equal explicitness that at the time of the death of any one of his sons, that son's one-third of his estate was to be delivered in trust to a new trustee, properly appointed and bonded, for the use and benefit of the surviving heirs of the deceased son.

 In *Marks,* supra, p. 438, this Court said: "[T]he important thing in the construction of the trust instrument is to determine the intention of the settlor as evidenced by all the provisions of the instrument, giving no portion any greater emphasis than any other. (Citations omitted). In determining this intention we cannot follow any hard and fast rule but each case must be considered on its own bottom. The peculiar facts and circumstances ... are considered to determine what is this intention.

It is not necessarily so much the language that is used by the settlor as it is his or her evident intention which governs." The basic rule in construing a will is that the court shall seek to discover the intention of the testator, and will give effect to it unless it contravenes some rule of law or public policy. That intention is to be ascertained from the particular words used, from the context and from the general scope and purpose of the instrument. *Bell v. Shannon,* 212 Tenn. 28, 367 S.W.2d 761 (1963); *Third National Bank v. First American National Bank,* 596 S.W.2d 824, 828 (Tenn.1980).

Where a will is drafted by a lawyer, technical words used therein must be given technical meanings.... Every word used by the testator is presumed to have some meaning.... The will is to be interpreted in the light of the circumstances existing at the time of its execution.... And is to be interpreted in the light of its general purpose... (Citations omitted), *Third National Bank in Nashville v. Stevens,* 755 S.W.2d 459, 462 (Tenn.App.1988). It is the absolute right of the testator to direct the disposition of his property and the Court's are limited to the ascertainment and enforcement of his directions. See *National Bank of Commerce v. Greenberg,* 195 Tenn. 217, 258 S.W.2d 765 (1953); *Third National Bank v. Stevens,* supra, at p. 463.

 Viewing the instrument in question in light of the above we note that the testator was specific in creating two sepa-

rate trusts with separate trustees appointed for each. By the first he directed that all of his property be placed in and held in trust for his three sons. In the first trust he named his son, Leo Daugherty as principal trustee with his other two sons as joint successor trustees. He directed that his sons serve without bond as trustees of the initial trust and took care to require a bond for the trustee of the second trust or any other appointed executor or trustee.

Although it is not clear in this record whether the will was drafted by an attorney, the trial court found that Mr. Daugherty consulted with a lawyer prior to its execution. The second paragraph of the will refers to lapsed legacies and devises, although he neither funded or named beneficiaries in the provision of the will creating such an interest in his estate. The sixth and fifteenth paragraphs speak specifically and appropriately of surviving heirs while paragraph eight speaks of bodily heirs with equal specificity. The use of these technical words clearly establishes the legal acuity and intent of the testator. Mr. Daugherty did not change his will in the four years between the death of his son Leo and his own demise. His intention to assure the preservation of his estate to the use and benefit of his sons and their surviving heirs, including their wives, seems evident.

We are of the opinion that the trust provision over for the surviving heirs vested in the trustee to be appointed for that purpose immediately upon the death of the testator. His failure to make provision for termination of the trust and disposition of the corpus had the effect of creating a passive or dry trust and did not void the vesting of an interest in the surviving heirs.

Under the laws of this State the trust beneficiaries are entitled to the principal rather than the beneficial interest. The rule set forth in *Ellis v. Fisher*, 35 Tenn. 124, 126 (1855) has been followed in this State since, at least, 1855. "Where real estate is devised to trustees and their heirs, to the use of or in trust for another and his heirs, the question whether the trustees do or do not take the legal estate depends chiefly on the fact whether the testator has imposed upon the trustees any trust or duty the performance of which requires that the estate should be vested in them. If so, an estate, coextensive with the duties to be performed, will vest in the trustee; if not, the legal ownership will pass over to the beneficial devisee." The *Fisher* case was cited with approval in *Jourolmon v. Massengill*, 86 Tenn. 81, 92, 5 S.W. 719 (1887) and in *McDowell v. Rees*, 22 Tenn. App. 336, 122 S.W.2d 839, 844 (1938), in which the court discussed dry trusts 122 S.W.2d at pages 843, 844:

"It is a simple or dry trust, when property is vested in one person in trust for another, and the nature of the trust, not being prescribed by the donor, is left to the construction of law. In such case the cestui que trust is entitled to the actual possession and enjoyment of the property, and to dispose of it, or to call upon the trustee to execute such conveyance of the legal estate as he directs. In short, the cestui que trust has an absolute control over the beneficial interest, together with a right to call for the legal title, and the person in whom the legal title vests is a simple or dry trustee." 2 Perry on Trusts, 6th Ed., sec. 520.... Technically, the Statute of Uses applied only to trusts created on freehold interests in land, but modern courts execute passive trusts of personalty, either by analogy to the Statute of Uses, or on the theory that any trust without a purpose is automatically executed. In such cases, the cestui que trust is entitled to hold the trust property free from the intervention of a trustee. (Citations omitted).

Additional issues have been raised by appellant in her supporting brief which were not set forth in her application for permission to appeal. We consider those issues which we find necessary to bring this case to an appropriate and proper conclusion. The first of these is whether the trial court correctly held that Helen Daugherty was an heir of the testator's son, Leo.

The trial court found that the effect of the will of J.R. Daugherty was to leave his

estate to his three sons. Upon the prior death of one of the sons the share left to that son became vested in fee in the then surviving heirs of the deceased son. He further found that Helen Daugherty was the sole surviving heir of her deceased husband Leo Daugherty and because no provision was made in the will beyond the surviving heirs the gift to that class was a gift in fee simple. He held that Helen Daugherty as the sole surviving heir of her deceased husband Leo Daugherty was entitled to one-third of the estate of J.R. Daugherty in fee. The Court of Appeals pretermitted this issue in its ruling that the will of J.R. Daugherty violated the rule against perpetuities and was void. The issue was settled as a matter of law in the trial court and will be considered here in that light.

We know from the record that Leo Daugherty died testate on 26 August 1981, leaving Helen Daugherty as his sole surviving heir. Their only son, Michael, predeceased his father in the year 1980. The record does not disclose his age at the time of his demise, therefore the court does not know whether he was in existence at the time J.R. Daugherty executed his will on 23 August 1969. We do know that J.R. Daugherty was certainly aware of the existence of Helen Daugherty as the only surviving heir of his son Leo as well as the existence of the wives of Chester and R.L. Daugherty. During all of the four years between the death of Leo and his own demise he had the opportunity to change his will and it is undisputed that he did not.

" . . . The construction of a will requires a consideration of the facts and surrounding circumstances at the time of its execution and every word by the testator is presumed to have some meaning but the will must be and can take effect (sic) as if it had been executed immediately before death of the testator." *Bell v. Shannon,* supra; T.C.A. § 32–3–101.

▮ The will leaves the testator's estate to the three sons for life. In a separate paragraph it specifically directs that the remainder of the estate go to the surviving heirs of the sons upon the death of each.

This language, plus the fact that no change was made in the will, evidences an intent that the surviving heirs of the sons take even though one of the sons predeceased the testator.

▮ The question remains, what share of the estate of R.L. Daugherty does Helen Daugherty take as the heir of Leo Daugherty. The trial judge found dispositive of the fact that at the time of the testator's death in 1985 she was her husband's sole heir under the statutes of descent and distribution, T.C.A. § 31–1–101(5). He relied on the case of *In re Estate of Gray,* 729 S.W.2d 668 (Tenn.App.1987), (application to appeal denied 5/11/87) to hold that Helen Daugherty was an heir within the meaning of the statute and was entitled to one-third of the estate in fee. He applied the current provisions of T.C.A. § 32–3–101:

> **Operation of will.**—A will shall be construed, in reference to the real and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator, and shall convey all the real estate belonging to him, or in which he had any interest at his decease, unless a contrary intention appear by its words in context.

We respectfully disagree with that analysis. We note first that his honor misconstrued the statement of the court in the *Gray* case. That case involved a situation where a husband and wife acquired title to four parcels of real estate as tenants in common under an agreement whereby each waived his or her right of survivorship. Mrs. Gray died testate in 1984 survived by her husband and two adult children from a previous marriage. She left her entire estate to her children. The husband filed a petition for an elective share of the estate. T.C.A. § 31–4–101. The trial court found that the husband, as the surviving spouse, was an heir-at-law of the deceased and entitled to an elective share of one-third of one-half of the undivided interest in the parcels of real estate held by the parties as tenants-in-common during their lifetime. The Court of Appeals held that both the case law in this State and text authority dictated that the agreement between the

parties must be read in light of the laws of descent and distribution at the time the agreement was executed and at that time the husband would not be an "heir-at-law" of the deceased and thus would not be entitled to share in the one-half undivided interest in the real property willed to her children.

We are also of the opinion he erred in applying the current provisions of T.C.A. § 32–3–101 under the facts of this case and he failed to give consideration to the concluding language of the statute, *"unless a contrary intention appear by its words in context."*

In *Moore v. Neely,* 212 Tenn. 496, 370 S.W.2d 537, 540 (1963) the Court stated the guiding rule thusly:

> "The cardinal rule in construction of all wills is that the court shall seek to discover the intention of the testator and give effect to it, unless it contravenes some rule of law or public policy. That intention is to be ascertained from the particular words used, from the context, and from the general scope and purpose of the will, read in the light of the surrounding and attending circumstances." (Citations omitted).

In *Locke v. Davis,* 526 S.W.2d 455, 457 (Tenn.1975), it was noted that "in construing a will, the testator's intention must prevail if it can be ascertained from the language of the will read in the light of circumstances known to the testator at the time the will was executed."

In *Nashville Trust Co. v. Grimes,* 179 Tenn. 567, 167 S.W.2d 994 (1943) the Court, citing *Nichols v. Todd,* 20 Tenn.App. 564, 570, 101 S.W.2d 486, 488 (1936), analyzed the origin of present T.C.A. § 32–3–101. The Court explained that the statute "was enacted to alter the unyielding common-law rule that a will of real estate spoke as of the time of its execution, and real property acquired by the testator after the execution of the will could not pass thereby.... This was for the reason that, by the common-law, 'a devise of realty was in the nature of a conveyance by deed, and only operated on lands of which the testator was seized when he made his will.'" They went on to cite with approval a number of cases which held, "under this statute many cases hold that a will speaks and takes effect as from the death of the testator, and not from its date, unless its language by fair construction, indicates a contrary intention.... 'If, construing the will as a whole, a different purpose be disclosed, and it appears that the testator intended the objects of his bounty to be reckoned from the execution of the will, that purpose and intention will be controlling in ascertaining who those objects were.'"

Mr. J.R. Daugherty was an industrious man of great thrift. He accumulated a good deal of property both realty and personalty. His principal business was the operation of a furniture store in Clinton, Tennessee, a family business in which each of his sons worked together with him from an early age. It was clearly evident from the record in this case including the pleadings, the stipulations, the arguments of counsel, and the will itself that his intention was that his sons continue to operate the family business and share in his property equally, with the secondary mission of giving over the remainder of any interest of each son on their demise to their surviving heirs. He was vitally interested in the preservation of his real property to his lineal heirs. We are satisfied that it was his intent that his estate be distributed to the beneficiaries of his secondary trust in accordance with the laws of descent and distribution existing at the time that he executed the will.

When the will was executed in 1969 there was a statute of descent for real property, T.C.A. § 31–101 et seq. (1955 code), and a separate statute of distribution for personal property. T.C.A. § 31–201. Under the statute of descent the surviving spouse could take real property only if the intestate left no other heirs capable of inheriting realty, in order to avoid escheat. T.C.A. § 31–103 (1955 code). In the instant case, Helen Daugherty would take no realty under the then existing statutes of descent. Leo Daugherty's heirs would be a surviving brother, R.L. Daugherty, and the issue of his deceased brother, Chester, tak-

ing per stirpes. T.C.A. § 31–101(b)(2)(a) (1955 code). Under the statute of distribution, T.C.A. § 31–101(2) (1955 code), in a case where there is no issue the surviving spouse is entitled to all personalty.

The judgment of the Court of Appeals holding that the will of J.R. Daugherty violated the rule against perpetuities is reversed. We hold that Helen Daugherty is entitled to a one-third interest in the personal property composing the estate of the testator at the time of his death. The testator's real property accruing to the benefit of Leo Daugherty passed to his heirs under the statute of descent. The case is remanded to the trial court for such other and further proceedings which may be required. The costs of this appeal are assessed equally between the appellant, Helen Daugherty, and the estate of R.L. Daugherty.

DROWOTA, C.J., COOPER, HARBISON, JJ., and McLEMORE, Special Justice, concur.