# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### January 21, 2014 Session

## CONRAD ERNEST FRYE v. KATRINA ANNEMARIE SMITH KIMBALL

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-10-0141-3      Kenny W. Armstrong, Chancellor**

---

**No. W2013-00636-COA-R3-CV - Filed February 6, 2014**

---

This case arises from a dispute between family members over the proper distribution of assets from two separate trusts. Appellant contends that the grantor of one of the trusts revoked a modification of the trust prior to her death pursuant to a settlement agreement with Appellant. The trial court declined to give effect to a settlement agreement because it was never signed by the parties prior to the grantor's death. Additionally, Appellant contends that the trial court erred in its interpretation of various provisions in each of the trusts. After thoroughly reviewing the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

Robert L. J. Spence, Jr. And Kristina Alicia Woo, Memphis, Tennessee, for the appellant, Conrad Ernest Frye.

Tommy L. Fullen and Joseph T. Townsend, Memphis, Tennessee, for the appellee, Katrina Annemarie Smith Kimball.

## OPINION

### I. BACKGROUND

Orion Frye and his wife, Elisabeth Frye, had two children: a son, Conrad Frye, and a daughter, Fredericka Smith. Fredericka Smith had a daughter, Katrina Kimball, the

granddaughter of Orion and Elisabeth.[1] In 1988, Orion and Elisabeth Frye entered into a lifetime lease agreement with Conrad to lease him a 408 acre farm located in Lawrence County, Arkansas. In exchange for use of the farm land, Conrad was obligated to pay his parents one-fourth of the crop rent and government payments generated by the farm each year. In addition to the farm land, Orion and Elisabeth Frye owned seventeen rental properties in Shelby County, Tennessee.

On November 11, 1996, Orion and Elisabeth transferred the majority of their real estate holdings, including the farm land, the farm lease payments, and the Shelby County rental properties, into two separate revocable trusts, the Orion F. Frye Trust (the "Orion Trust") and the Elisabeth E. Frye Trust (the "Elisabeth Trust"). Each of the trusts was given a one-half interest in each of the parties' real estate assets. Orion was the grantor and original trustee of the Orion Trust, while Elisabeth was the grantor and original trustee of the Elisabeth Trust.

In pertinent part, the terms of the Orion Trust Agreement and the Elisabeth Trust Agreement were identical when they were executed in November 1996. Both of the trusts provided that upon death of the original trustee, the successor trustee would be designated in the following order: (1) surviving spouse; (2) Conrad Frye; (3) Fredericka Smith. Both of the trusts provided that upon the death of the grantor, the grantor's spouse would become the beneficiary of the trust during his or her lifetime. Both of the trust agreements provided that following the death of both the grantor and the grantor's spouse, the trust assets would be distributed as follows:

(i). Grantor's son CONRAD ERNEST FRYE of Lawrence County, Arkansas shall receive, outright and free of further trust, 70% of the residuary estate, which shall include, to the fullest extent practicable, the Trust's interest in the farm consisting of approximately 400 acres in Lawrence County, Arkansas, upon which he currently resides;

(ii). Grantor's daughter FREDERICKA ANNEMARIE FRYE SMITH of Memphis, Shelby County, Tennessee, shall receive, outright and free of further trust, 20% of the residuary estate, which shall include, to the fullest extent practicable, the Trust's interest in the residence municipally known as 617 Northaven Drive, Memphis, Shelby County, Tennessee, where she currently resides; and

(iii). Grantor's granddaughter KATRINA ANNEMARIE SMITH of

_____

[1]For clarity, we will at times refer to parties by their first names.

Memphis, Shelby County, Tennessee, shall receive, outright and free of further trust, 10% of the residuary estate.

The Trustee of the trust established hereunder shall distribute the residuary estate outright and free of further trust, as above directed, as soon after the death of Grantor's spouse and Grantor as is practicable.

On January 19, 2005 Orion Frye died, having never modified the terms of the Orion Trust Agreement. Upon Orion's death, the terms of the Orion Trust became irrevocable, and Elisabeth became its trustee. Several months later, on November 19, 2005, Elisabeth modified the terms of the Elisabeth Trust Agreement (the "Modified Elisabeth Trust"). Notably, with regard to distribution of the trust's assets, the Modified Elisabeth Trust provided:

A. Upon death of Grantor there being no Marital Estate The trust estate shall be divided and distributed as follows after all Federal and State taxes have been satisfied.

1. Grantor's daughter Fredericka Annemarie Smith of Memphis, Shelby County, Tennessee shall receive, outright and free of further trust for her lifetime, 70% of the residuary estate, which shall include to the fullest extent practicable, the trust interest in the farm consisting of approximately 400 acres in Lawrence County, Arkansas, upon which Conrad Ernest Frye currently resides.

(ii). Grantor's son Conrad Ernest Frye of Lawrence County, Arkansas, shall receive, outright and free of further trust for his lifetime, 20% of the residuary estate, which shall include, to the fullest extent practicable, the Trust's interest in the residence municipally known as 617 Northaven Drive, Memphis, Shelby County, Tennessee, where the daughter formally resided

(iii). Grantor's granddaughter Katrina Marie Kimball of Memphis, Shelby County, Tennessee, shall receive, outright and free of further trust for her lifetime, 10% of the residuary estate. The Trustee of the Trust established hereunder shall distribute the residuary estate outright and free of further trust, as above directed, as soon after the death of Grantor's spouse and Grantor as is practicable.

On January 27, 2010, Conrad filed a petition in chancery court to remove Elisabeth as trustee of the Orion Trust. His complaint alleged that Elisabeth had failed to perform her

duties as trustee in violation of the trust agreement and requested that the court appoint him to be the trustee in her place. On April 13, 2011, while the litigation was ongoing, Elisabeth died and Conrad became the successor trustee of both the Orion Trust and the Modified Elisabeth Trust. At that point, the primary issue in the case became the interpretation of the various trust agreements and the proper distribution of the trusts' assets. Conrad sought leave to join Katrina, the trusts' only other living beneficiary,[2] as a party to proceedings, which the trial court granted.

On July 1, 2011, Conrad filed a second amended petition, in which he alleged that he had reached a settlement agreement with Elisabeth on January 25, 2011 that resolved all outstanding issues concerning the trusts. According to the petition, the parties agreement provided that: (1) Conrad would act as co-trustee with Elisabeth Frye of the Orion Trust and the Elisabeth Trust, and that Elisabeth would renounce and declare void the Modified Elisabeth Trust; (2) Elisabeth would reaffirm and reinstate the original Elisabeth Trust from 1996; (3) Conrad's farm lease would be amended to permit him to pay $1,400 per month as rent instead of one-fourth of the crop rent and government payments; (4) Conrad would assume the $964.34 monthly mortgage payments[3] to Regions Bank for the farm; and (5) the lawsuit would be dismissed without prejudice. As evidence of the settlement agreement, Conrad provided the court with an unsigned memorandum of the agreement, which was sent from Elisabeth's attorney to Conrad's attorney on April 8, 2011, though it was never executed by the parties because Elisabeth died less than a week later. Though the drafted settlement agreement was not signed, Conrad contended that the court should give effect to its terms because each of the parties acted in accordance with it prior to Elisabeth's death.

Katrina answered the second amended petition, contending that any testimony or unsigned memorandum of the settlement agreement should be barred by the statute of frauds. She argued that in the absence of such an agreement, the Modified Elisabeth Trust was made irrevocable by her death. Thus, Katrina contended that the Orion Trust and the Modified Elisabeth Trust governed the distribution of the trusts' property. Katrina also requested that the court remove Conrad as Successor Trustee of the two trusts because he had failed to distribute the shares of the trust property following Elisabeth's death.

A trial on the matter was held in the Chancery Court of Shelby County on April 10, 2012. Because there was no jury, the trial court judge allowed Conrad to present evidence

---

[2]Fredericka passed away on August 12, 2010, predeceasing Elisabeth and leaving Katrina as her sole heir.

[3]Though the draft of the settlement agreement introduced at trial states that mortgage payments on the farm are $1,000 per month, it appears that $964.34 is the actual amount.

of the alleged settlement agreement over the objection of Katrina's attorney. Conrad contended that the court should give effect to the settlement agreement because he and Elisabeth had partially performed their duties under the agreement prior to her death. Therefore, he argued that the Modified Elisabeth Trust had been revoked and the original 1996 Elisabeth Trust should govern the distribution of trust assets. Alternatively, Conrad contended that if the Modified Elisabeth Trust governed the distribution, it should be interpreted as only granting its beneficiaries life estates in its assets. Finally, Conrad further contended that because each of the trusts required its beneficiaries to survive both Orion and Elisabeth in order for their share to vest, Fredericka's share never vested and Katrina was not entitled to it as her heir.

Ultimately, the trial court rejected each of Conrad's arguments. The trial court concluded that because the settlement agreement was never executed by Elisabeth prior to her death, it was not enforceable. Regarding Conrad's other claims, the trial court stated:

> The Petitioner, Conrad Frye, argues that the "for lifetime" language in the modified trust agreement created only a lifetime interest for the beneficiaries in Mrs. Frye's share of the trust assets. He further argues that the share left Fredericka Smith by both Grantors never vested because she did not survive her parents and, as a result, her gift by both parents reverted back to the trust.
>
> Reviewing all of the provisions of the modified trust in context, the Court is convinced that Elisabeth Frye did not intend to create a life estate in the trust assets and continue the trust beyond the named beneficiaries' lives, but rather intended for the trust assets to be distributed upon her death. This conclusion is supported by various provisions of the modified trust that directs the trustee to distribute the rest, residue, and remainder of the trust upon her death and to distribute the same outright and free of further trust. This language clearly shows no life estate was intended by the Grantor. Additionally, there are no provisions in the trust for further distribution of the trust assets beyond the beneficiaries' lifetime.
>
> In regard to Fredericka's share of the trust assets, both trusts executed by her parents have specific language spelling out what happens to a child's share who predeceases the grantor. The trusts envision that such child's share passes to the child's issue outright and free of further trust if the issue has reached the age of twenty-five (25). In the case here, the Intervenor, Katrina Smith Kimball is the sole issue of Fredericka and has reached the age of twenty-five (25), and, as such, she is entitled to her mother's share.

After interpreting the language of the trusts, the trial court, noting that each of the trusts contained fifty percent of the total trust property, found that the named beneficiaries were entitled to the following percentages of the entire property:

Under the terms of the Orion Trust,
Conrad Frye- 35%
Fredericka Smith- 10%
Katrina Kimball- 5%
Under the terms of the Modified Elisabeth Trust,
Conrad Frye- 10%
Fredericka Smith- 35%
Katrina Kimball- 5%.

Because Katrina is the sole surviving issue of Fredericka, the trial court's disposition of the case resulted in Conrad receiving a forty-five percent interest in the trusts assets with Katrina receiving the remaining fifty-five percent interest. The court divested all real estate owned by the trusts and vested it in Conrad and Katrina as grantees in accordance with their respective percentage interests. Conrad subsequently appealed the judgment of the trial court.

## II. ISSUES

Conrad Frye raises the following issues on appeal, as we have restated them:

1.    Whether the trial court erred in finding that the settlement agreement between Conrad Frye and Elisabeth Frye was unenforceable.

2.    Whether the trial court erred in finding that the Modified Elisabeth Trust governed the distribution of trust assets.

3.    Whether the trial court erred in its interpretation of the Modified Elisabeth Trust Agreement.

4.    Whether the trial court erred in its interpretation of the Orion Trust Agreement.

## III. STANDARD OF REVIEW

In a non-jury trial, our standard of review is de novo. *See Wright v. City of Knoxville*,

898 S.W.2d 177, 181 (Tenn. 1995). We afford a presumption of correctness to the trial court's findings of fact, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). With respect to the trial court's conclusions of law, however, there is no presumption of correctness. *See Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

## IV. DISCUSSION

Before we address the proper interpretation of the trust agreements, we must determine whether the trial court erred in finding that Elisabeth Frye never revoked her Modified Elisabeth Trust. ITEM XII of the Modified Elisabeth Trust Agreement, titled "Right of Revocation" states:

> So long as the Grantor is living, and not under any incapacity (as set forth under Item II), Grantor shall have the express right and power at any time to amend, modify or revoke this Trust instrument in whole or in part, in any manner, by delivering written notice thereof to Trustee.

Katrina contends that this language in the trust agreement unambiguously provides that the Modified Elisabeth Trust could only be revoked by a signed writing. Conversely, Conrad contends that because Elisabeth was both the grantor and trustee of the trust prior to her death, it would be illogical to enforce a provision requiring that she deliver a written document to herself. Regardless of what delivery would be required, it is clear that the provision does not allow for an oral revocation of the trust. Elisabeth's attorney drafted a settlement agreement that included a revocation of the Modified Elisabeth Trust Agreement, however, because she passed away without signing the agreement, it has no legal effect. Indeed, Robert Miller, the attorney who drafted the settlement agreement for Elisabeth Frye, acknowledged in his testimony at trial that because she did not sign the agreement, she was not bound to it and reserved the right to change her mind. Because the oral agreement between Conrad and Elisabeth was never reduced to writing and executed prior to her death, we conclude that the trial court did not err in finding that the Modified Elisabeth Trust Agreement was never revoked and governed the distribution of Elisabeth's interest in trusts' assets.

Having determined that the trial court properly enforced the Modified Elisabeth Trust Agreement, we address Conrad's alternative argument that the trial court misinterpreted its language regarding distribution of its assets. He contends that the Modified Elisabeth Trust created interests in the trust's assets limited to the lifetime of their beneficiary rather than giving outright gifts. After reviewing the trust agreement, we disagree with Conrad's assertion.

The interpretation of a trust agreement is a question of law. *See Estate of Burchfiel v. First United Methodist Church of Sevierville*, 933 S.W.2d 481, 483 (Tenn. Ct. App. 1996). It is interpreted similarly to contracts, deeds, or wills. *In re Estate of Marks*, 187 S.W.3d 21, 28 (Tenn. Ct. App. 2005). The overriding purpose of the trust's interpretation is to determine the intent of the grantor. *See Hall v. Hall*, 604 S.W.2d 851, 853 (Tenn. 1980). Where clauses within the trust contradict or are inconsistent with each other, the court must determine the grantor's intention to determine which will prevail. *Marks v. Southern Trust Co.*, 310 S.W.2d 435, 438 (Tenn. 1958). We ascertain the grantor's intention from examining the particular words used and their context, as well as from the general scope and purpose of the instrument. *Daugherty v. Daugherty*, 784 S.W.2d 650 (Tenn. 1990).

The Modified Elisabeth Trust Agreement contains conflicting provisions. With regard to each of the beneficiaries, ITEM IV of the agreement states that each should take their designated portion of Elisabeth's residual estate, "outright and free of further trust for [his or her] lifetime." Conrad contends that the "for lifetime" language of the agreement evinces Elisabeth's intent to create life estates for the beneficiaries while retaining a reversionary interest in the trust. Conrad also points out that under this interpretation of the Modified Elisabeth Trust, Fredericka's share would have reverted back to the trust upon her death rather than passing to Katrina.

After reviewing the Modified Elisabeth Trust Agreement as a whole, we do not agree with Conrad's contention. Though the trust uses the "for lifetime" language when dividing up the residuary estate between the beneficiaries, the language that immediately follows directs the trustee to, "distribute the residuary estate outright and free of further trust, as above directed, as soon after the death of Grantor's spouse and Grantor as is practicable." The use of the language "outright and free of further trust," which is also used alongside the "for lifetime" language in designating the individual gifts, indicates that the grantor intended the trust to create unencumbered interests, rather than life estates. Apart from the "for lifetime" language used in distributing the residuary estate, there is no other reference to life estates in the trust agreement. Notably, there are no provisions regarding further distribution or management of the trust assets beyond the beneficiaries' lifetimes. Upon review of the document as a whole, we affirm the interpretation of the trial court; Elisabeth Frye did not intend to create life estates in the trust assets, but rather intended for the beneficiaries to take their shares of the residuary estate outright.

Finally, Conrad contends that the trial court erred in its interpretation of the Orion Trust Agreement. Specifically, he argues that in order for any child or grandchild to take their share of the trust assets, they were required to survive both Orion and Elisabeth Frye. Conrad relies on the following provision of the trust in making his assertion:

Each such child and grandchild who has attained the age of twenty one (21) years and who survives Grantor and Grantor's wife shall have the power to appoint his or her share by specifically referring to this provision in his or her Last Will and Testament, duly executed and probated, and in default of the exercise of such power such child's share shall pass to such child's closest living relative(s) in accordance with the laws of descent and distribution for the State of Tennessee.

Conrad contends that because Fredericka predeceased her mother, Elisabeth, she did not meet the condition precedent to take under the Orion Trust, and therefore Katrina is not entitled to her share. Additionally, Conrad contends that because the Orion Trust and the Elisabeth Trust are reciprocal, the same reasoning can be applied to each, and Katrina is not entitled to her mother's share of either trust.

Again, after reviewing the Orion Trust as a whole, we do not agree with Conrad's contention. First, we note that the trust provision Conrad cites does not support his argument. In fact, it supports the opposite conclusion, that Katrina is entitled to her mother's share of the trust assets. The provision provides that a beneficiary may only appoint their share of the trust assets if they survive both Orion and Elisebeth Frye. However, in the absence of such an appointment, it provides that the beneficiary's share will pass through intestate succession. Because Fredericka predeceased her mother, her share of the trust passed to her closest living relative, her daughter, Katrina, in accordance with the provision above.

In addition to the above cited provision, which does not support Conrad's contention, another provision of the trust specifically provides for the distribution of a grandchild's share whose parent has predeceased the grantor. The paragraph titled "Trust for Grandchildren" in ITEM V of the Orion Trust Agreement provides:

With regard to any grandchild of Grantor living at the time of Grantor's death, whose parent, being a child of Grantor, has predeceased Grantor, and who is under the age of twenty-five (25) years, at Grantor's death, such grandchild shall receive his or her per stirpes share of such grand-child's deceased parent's share of the trust estate, in trust, until such grandchild of Grantor attains the age of twenty-five (25) years.[4]

That provision clearly contemplates the distribution of a deceased parent's share to a grandchild where the parent predeceased the grantor. Upon review of the relevant

---

[4]The Modified Elisabeth Trust contains a nearly identical provision.

provisions, we find that Conrad's argument is without merit.

In their briefs, the parties raise issues concerning the applicability of the Statute of Frauds to the settlement agreement between Conrad and Elisabeth. Inasmuch as we have already determined the merits of this appeal above, those issues are pretermitted. We therefore affirm the judgment of the trial court.

## V. CONCLUSION

Based on the foregoing, we affirm the judgment of the trial court. All costs associated with this appeal are taxed to the appellant, Conrad Ernest Frye, and his surety, for which execution may issue.

_____
DAVID R. FARMER, JUDGE