IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 1, 2024

## JOHN E. SULLIVAN, JR. GST EXEMPT TRUST ET AL. v. FRANK G. SULLIVAN ET AL.

**Appeal from the Probate Court for Shelby County**
**No. PR020125      Kathleen N. Gomes, Judge**

_____

**No. W2023-01600-COA-R3-CV**

_____

Testator created a generation-skipping trust and instructed the eventual trustee to distribute all remaining trust funds to the "then living descendants of the child per stirpes" upon the death of Testator's child. Testator's child later died, leaving two generations of descendants. Each first-generation descendant is the parent of a corresponding second-generation descendant, and neither predeceased the Testator's child. Trustee brought a declaratory judgment action, seeking to ascertain whether only the first generation of the child's descendants should inherit trust funds or if, instead, members of both generations should take equally. Relying on Testator's choice of a per stirpes distribution system, the probate court concluded that trust funds should be split equally between the first-generation descendants, reasoning that the funds do not go any further under a traditional per stirpes framework. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court Affirmed**

JEFFREY USMAN, J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, and KENNY W. ARMSTRONG, JJ., joined.

David M. Sullivan and Richard Glassman, Memphis, Tennessee, for the appellant, John E. Sullivan, Jr. GST Exempt Trust, David M. Sullivan, Trustee.

Jana Davis Lamanna, J. Mark Griffee, and Stanley N. Medlin, Memphis, Tennessee, for the appellees, John Sullivan, III, and Frank G. Sullivan.

# OPINION

## I.

This is the second appeal concerning the legacy of the estate of John E. Sullivan (Testator). *See generally John E. Sullivan, Jr. GST Exempt Tr. v. Sullivan*, No. W2022-00518-COA-R3-CV, 2022 WL 16918839 (Tenn. Ct. App. Nov. 14, 2022) ("*Sullivan I*"). During his life, Testator executed a will that laid the foundation for the creation of future testamentary trusts to support his family. Specifically, Testator wrote in Article Seven of his will that

> [u]pon the death of the last to die of my spouse and me (the "division date"), the trustee shall allocate the remaining principal of all trusts then held under this instrument, which is not otherwise effectively disposed of, among as many separate equal trusts as shall be necessary to establish one trust named for each child of mine who is either living on the division date or then deceased leaving one or more descendants then living. Each GST Exempt Trust named for a child of mine that is created pursuant to the provisions of this paragraph and the GST administration provisions of this instrument, or was created under Article Five, shall be administered as provided in Article Eight of this instrument.

Testator died in August 2019, and the parties agree that his death triggered Article Seven. Accordingly, Article Seven created one "generation-skipping exempt trust" for each of Testator's living children, including a trust in the name of John E. Sullivan, Jr. (the Trust).

In Article Eight, Testator's will explains what happens to the Trust when John E. Sullivan, Jr., dies. It states in part:

> B. If the child for whom the trust is named is living on the division date, then upon the death of the child, the trustee shall distribute the remaining principal of the trust to such one or more of my descendants as the child may appoint by will.

> C. At such time at or after the death of the child for whom the trust is named, or, if later, the division date, the trustee shall distribute the principal of the trust not otherwise effectively disposed of in equal shares to the then living descendants of the child per stirpes or if none to my then living descendants per stirpes, and each share shall be held in a separate trust and administered as set forth in Article Ten, paragraph B.

Article Eighteen of Testator's will also sets out a number of "Interpretive Rules" related to the operation of various provisions. Relevant here, Testator clarified,

C. Whenever reference is made to the descendants, "by right of representation" of a person, representation shall be calculated from the generation of that person's children, whether or not a child of that person in fact is living at the time of calculation.

. . .

N. This instrument and all dispositions hereunder shall be governed by and interpreted in accordance with the laws of the State of Tennessee, or the laws of such other state or country to which the situs of any trust created herein may be moved pursuant to the trustee's power to do so set forth in subparagraph 31 of paragraph A of Article Fourteen.

John E. Sullivan, Jr., (the Deceased) died in 2020, triggering Article Eight. The Deceased was survived by two generations of descendants, including two children (the First-Generation Descendants) and two grandchildren (the Second-Generation Descendants). Each First-Generation Descendant is the parent of one corresponding Second-Generation Descendant. The parties agree that the Deceased did not "appoint" any individuals from either of these generations to take the remaining Trust principal in his own will, meaning the descension of the Trust principal depends on the operation of Article Eight, Section C, not Article Eight, Section B.

David M. Sullivan (Trustee),[1] whom the Deceased originally named co-trustee and who later assumed sole trustee duties, filed a declaratory judgment action in Shelby County Probate Court to determine, among other things, "the share of the trust principal that [the Second-Generation Descendants] are entitled to receive and whether a guardian *ad litem* should be appointed for them."[2] Trustee asserted that the Testator's use of the phrase "then living descendants" in Section C evidenced an intent to have both generations of the Deceased's descendants take equal shares of the Trust principal, equating to a four-way split. Specifically, Trustee pleaded that he believed that "[t]he maximum amount each would receive is 25%, not the 50% [the first-generation descendants] claim."

By contrast, the First-Generation Descendants pointed out that Testator indicated a desire to have the Trust funds descend under a "per stirpes" distribution system. The First-Generation Descendants contend that under such a system the Trust funds could only

---

[1] Trustee is also one of Testator's children. Ostensibly, Trustee is the named beneficiary of a separate generation-skipping trust by operation of Article Seven of Testator's will. It is not alleged that Trustee holds any financial interest in the funds contained in the Trust at issue.

[2] As we noted in *Sullivan I*, Trustee originally presented four separate causes of action. *See Sullivan I*, 2022 WL 16918839, at *3. This appeal, however, only concerns Count III of Trustee's declaratory judgment action: "Whether the [Great-Grandchildren] are entitled to a share of the Trust principal." *Id.*

legally fall to the First-Generation Descendants. A court-appointed guardian ad litem (GAL) agreed with the First-Generation Descendants' position, writing in a report that "the Trust required distribution of the Trust assets per stirpes and not per capita, and that the [Second-Generation Descendants] therefore were not entitled to a share of the Trust."

The probate court agreed with the First-Generation Descendants and the GAL. The court "determined that Article Eight (c) is not ambiguous, that it provides for distribution of the Trust to the 'then living descendants of the children, per stirpes,'" and "that [First-Generation Descendants] are the only two beneficiaries." Based on this conclusion, the probate court also denied Trustee leave to amend his complaint, as adding the Second-Generation Descendants as parties to the litigation would be unnecessary if they were not entitled to any share of the remaining Trust funds. After Trustee's first appeal was dismissed for lack of a final judgment, the probate court entered a final order affirming its decision on this issue in November 2023.

Trustee appeals the probate court's ruling. He argues the probate court erred in its assessment of the Second-Generation Descendants' rights under the Trust. Assuming that the probate court erred, Trustee also seeks to reverse its denial of his request to amend his complaint. The First-Generation Descendants defend the probate court's order, separately assert that Trustee is operating in "bad faith," and request an award of attorney's fees to avoid an unjust diminution of Trust funds.

II.

Trustee's appeal turns on an interpretation of the terms of Testator's will. Tennessee law prevents courts from interfering with "the absolute right of the testator to direct the disposition" of his or her estate. *In re Estate of Clifton*, 633 S.W.3d 557, 559 (Tenn. Ct. App. 2021) (quoting *Daughtery v. Daughtery*, 784 S.W.2d 650, 653 (Tenn. 1990)). Our role in a dispute over the terms of a will is "limited to the ascertainment and enforcement of [the testator's] directions." *Id.* (quoting *Daughtery*, 784 S.W.2d at 653).

"The construction of a will is a question of law that we review de novo with no presumption of correctness." *Id.* Under Tennessee law,

> The cardinal rule in construction of all wills is that the court shall seek to discover the intention of the testator and give effect to it unless it contravenes some rule of law or public policy. The testator's intention is to be ascertained from the particular words used in the will itself, from the context in which those words are used, and from the general scope and purposes of the will, read in the light of the surrounding and attending circumstances. In applying this cardinal rule, it is necessary to look to the entire will, and the testatrix's intention must be determined from what she has written, not from what it is supposed she intended.

- 4 -

*Fisher v. Malmo*, 650 S.W.2d 43, 46 (Tenn. Ct. App. 1983) (citations omitted); *accord Wright v. Brandon*, 863 S.W.2d 400, 402 (Tenn. 1993) (citations omitted). It is often "necessary to look to the entire will and codicil, if any, and not to isolated parts" to fully ascertain the testator's intent. *Stickley v. Carmichael*, 850 S.W.2d 127, 132 (Tenn. 1992) (quoting *Martin v. Taylor*, 521 S.W.2d 581, 584 (Tenn. 1975)); *In re Estate of Vincent*, 98 S.W.3d 146, 150 (Tenn. 2003) ("[I]ntention is to be gathered from the scope and tenor of the whole will" (quoting *Podesta v. Podesta*, 189 S.W.2d 413, 415 (Tenn. 1945))). "[E]very word used by a testator in a will is presumed to have some meaning, [and] we must, if possible, give effect to every provision, clause, term, or word used in the will." *Jacobsen v. Flathe*, Nos. 01A01-9511-CH-00510, P-94-1236, 1997 WL 576339, at *4 (Tenn. Ct. App. Sept. 17, 1997). Additionally, it is "axiomatic that where a testator uses technical words, the words will be taken to have been used in their legal sense unless the context of the will clearly indicates to the contrary." *Wright*, 863 S.W.2d at 402; *see also In re Estate of Clifton*, 633 S.W.3d at 559.

III.

The central issue in this appeal is whether the probate court erred in concluding Article Eight provides for the First-Generation Descendants only or both the First and Second-Generation Descendants to inherit the remaining Trust fund. Critical language appears in Article Eight, Section C, which, as noted above, states the following:

> C.      At such time at or after the death of the child for whom the trust is named, or, if later, the division date, the trustee shall distribute the principal of the trust not otherwise effectively disposed of in equal shares to the then living descendants of the child per stirpes or if none to my then living descendants per stirpes, and each share shall be held in a separate trust and administered as set forth in Article Ten, paragraph B.

The parties' dispute turns upon the interpretation of the Testator's instruction to "distribute the principal of the trust not otherwise effectively disposed of in equal shares to the *then living descendants* of [Deceased] *per stirpes*." It does not appear that the First-Generation Descendants dispute that the Second-Generation Descendants qualify as "then living descendants" of the Deceased. In fact, the First-Generation Descendants concede that the probate court incorrectly included the term "heirs" in its order when the Testator's will uses the word "descendants," but assert that this error is harmless, pointing out that "Testator's instructions to distribute the funds to descendants of his child 'per stirpes' is operationally the same as if Testator had left the funds to his heirs."[3] Instead, the First-Generation Descendants' "argument is that Testator's will calls for the trust principal to be distributed to Decedent's descendants in a per stirpes manner," and, operationally

_____

[3] For reasons discussed below, we agree that any error in this regard is harmless.

- 5 -

speaking, the Second-Generation Descendants would not be entitled to any portions of the remaining Trust principal under a traditional per stirpes distribution system. While Trustee asserts that Testator's desire to give Trust principal to each of the Deceased's "then living descendants" broadly encompasses "[a]ll lineal descendants without regard to degree of proximity or remoteness," the First-Generation Descendants counter that interpreting Testator's will consistent with Trustee's view would "essentially strike the phrase 'per stirpes' from the will" in favor of enacting a per capita distribution system, which is the "antithesis" of a per stirpes distribution scheme. *See Wright*, 863 S.W.2d at 403 (quoting Black's Law Dictionary 1144 (6th ed. 1990)).

Though there are complexities in the will's language, the First-Generation Descendants have the better of the argument. The Trustee's interpretation of Testator's will departs from the will's instructions. Testator indicated that the Trust funds should descend "per stirpes" to the Deceased's "then living descendants." "Per stirpes" is a term that comes from intestacy law that refers to "the method of dividing an intestate estate where a class or group of distributees take the share which their deceased would have been entitled to, taking thus by their right of representing such ancestor, and not as so many individuals." *Id.* (quoting Black's Law Dictionary 1144 (6th ed. 1990)); *see also* Tenn. Code Ann. § 31-2-106 ("If representation is called for by this title, such representation shall be per stirpes."); *Housley v. Laster*, 140 S.W.2d 146, 147 (Tenn. 1940) ("In the law of descent and distribution, taking by representation means taking per stirpes."). Under all forms of per stirpes distribution, if the deceased has surviving children, those surviving "children and descendants of deceased children take the remainder of the decedent's property to the exclusion of everyone else." Robert H. Sitkoff & Jesse Dukeminier, WILLS, TRUSTS, AND ESTATES 79 (10th ed. 2017). This means that "if a will stated 'to my descendants, *per stirpes*,' the estate would be divided into the primary shares at the children generation" and a grandchild would take from the estate only if their parent predeceased the decedent. Wolven and Stephanie N. Ross, *Common Pitfalls When Using the Term 'Per Stirpes*,' 48 Est. Plan. 17 (2021); Tenn. Code Ann. § 31-2-104(b)(1) (explaining that issue that are not "of the same degree of kinship to the decedent . . . take by representation"); *c.f. First Tenn. Bank, N.A. v. Stanfield*, No. E2003-02756-COA-R3-CV, 2004 WL 2296512, at *3 (Tenn. Ct. App. Oct. 13, 2004) (explaining in a case involving two disinherited children and a will provision that stated "to my other children then living and the living descendants, per stirpes, of any deceased child of mine" that "because [the two disinherited children] are still alive, their children take no part of [the] trust estate . . . Patricia Webb takes the entire trust estate because she was the only surviving child of the decedent who was not disinherited"). Applying a standard per stirpes distribution system to this case, as Testator's will instructs to do, the probate court correctly concluded that only the First-Generation Descendants were eligible to take shares of the remaining Trust funds. The First-Generation Descendants are the parents of the Second-Generation Descendants and neither predeceased the Deceased, meaning they are the only two individuals currently entitled to take shares of the remaining Trust principal.

- 6 -

To the extent that Article Eight, Section C's use of the phrase "equal shares" creates any uncertainty about whether Testator truly intended to enact a per stirpes system, *see In re Green*, No. M2002-01672-COA-R3-CV, 2003 WL 22037330, at *1 (Tenn. Ct. App. Aug. 29, 2003) (pointing out that the phrase "my children, if any, who survive me in equal shares" is technically inconsistent with a "per stirpes" distribution system), the Interpretive Rules included in Article Eighteen of Testator's will clarify matters. *See Stickley*, 850 S.W.2d at 132 (empowering courts to examine the entire will to ascertain a testator's intent); *In re Estate of Vincent*, 98 S.W.3d at 150. Article Eighteen, Section C provides that "[w]henever reference is made to the descendants, 'by right of representation' of a person, representation shall be calculated from the generation of that person's children, whether or not a child of that person in fact is living at the time of calculation." That language operates the same way that Tennessee's per stirpes intestacy statute works, *i.e.*, dividing an intestate estate originally at the child level regardless of whether any children are in fact still living, bolstering the idea that Testator intended to enact a per stirpes distribution scheme. *See* Tenn. Code Ann. § 31-2-104(b)(1). Article Eighteen, Section N further recognizes that Testator created his will against the backdrop of Tennessee intestacy laws and empowers us to interpret its provisions "in accordance with the laws of the State of Tennessee," and Tennessee supports per stirpes distributions unless a testator clearly indicated that he or she preferred to enact a different distribution system. *See, e.g., White v. Kane*, 159 S.W.2d 92, 94 (Tenn. 1942) ("[T]he courts generally seek for any indication, however slight, to support a per stirpes interpretation of the word 'issue'—on the ground that this interpretation would not only be in conformity with the long established statutory rules of descent and distribution, but with the presumed intention of the grantor or testator.")

The First-Generation Descendants correctly point out that allowing the Second-Generation Descendants to take shares of the Trust funds would eschew a per stirpes distribution system—the system explicitly endorsed by Testator—in favor a per capita distribution system. Unlike per stirpes distribution schemes, per capita distributions entitle every lineal descendant of the deceased, regardless of their level of kinship, to take an even portion of the estate. Sitkoff & Dukeminier, *supra*, at 874 ("Under a per capita distribution, favored by early law but no longer, all of A's descendants alive on the distribution date take an equal share."); *Ridley v. McPherson*, 43 S.W. 772, 773 (Tenn. 1897) (describing a system in which "two or three generations—parents and their children and grandchildren— . . . share concurrently and . . . equally, as between themselves" as "per capita"). As mentioned above, per capita is the "antithesis" of per stirpes and Tennessee courts disfavor applying such a system unless the testator provided clear instructions to that effect in his or her will. *See Wright*, 863 S.W.2d at 403 (quoting Black's Law Dictionary 1144 (6th ed. 1990)); *White*, 159 S.W.2d at 94; *see also Alexander v. Wallace*, 76 Tenn. 569, 574 (1881) (noting that while per capita distributions are allowed, "this, too, is controlled by the intention of the testator, and if that intention leaves it doubtful in what proportion the class is to take, and *a fortiori*, if it express or fairly implies the contrary, the rule of equality will not prevail"). Here, there is no room for a per capita distribution; as evidenced by Articles

Eight and Eighteen, Testator chose per stirpes distribution. While he distances himself from this characterization, Trustee has effectively requested this court to strike the phrase "per stirpes" from Testator's will by granting shares of the Trust to the Second-Generation Descendants. That is a request we cannot fulfill. *See Wright*, 863 S.W.2d at 402; *Fisher*, 650 S.W.2d at 46.

Trustee's reliance on *Wright v. Brandon*, 863 S.W.2d 400 (Tenn. 1993), to support his proposed distribution is misplaced. *Wright* dealt with an entirely different circumstance: whether a surviving spouse qualifies as an "heir" that could inherit property under a per stirpes distribution scheme. *Wright*, 863 S.W.2d at 402. The Tennessee Supreme Court recognized that the statutory definition of the word "heir" encompasses surviving spouses and that choosing a "per stirpes" distribution system alone could not disenfranchise a surviving spouse. *Id.* at 402-03. Specifically, the *Wright* Court wrote, "'[P]er stirpes' is not a description of who is to take under the terms of a will, but describes the portion of the share to be allotted to individual members of that class of persons designated by the term 'heirs at law,' which is a term of purchase." *Id.* at 403. This statement of law remains true, but, contrary to Trustee's assertion, it does not undermine the probate court's order. Testator's choice of a "per stirpes" distribution system did not disqualify the Second-Generation Descendants from ever having taken a portion of the available Trust funds. For example, if one First-Generation Descendant had predeceased the Deceased, then Second-Generation Descendants would have stepped into his role and taken the remaining trust principal. *See Spofford v. Rose*, 237 S.W. 68, 71 (Tenn. 1922) ("There can be no question but that if Mrs. Spofford's brother and sister were living they would constitute her heirs, *and since they are dead their grandchildren represent them* and take the shares which they would have taken if living, per stirpes.") (emphasis added); *see also* Sitkoff & Dukeminier, *supra*, at 79 ("When one of several children has died before a decedent, leaving descendants, all states provide that the child's descendants *represent* the dead child and divide the child's share among themselves."). Of course, that did not occur in this case.

Consistent with *Wright*, Testator's choice of a per stirpes distribution system "merely directs the proportions" of the Trust funds that each generation of descendants can inherit. *See Wright*, 863 S.W.2d at 403; *see also Jacobsen*, 1997 WL 576339, at *5 ("The terms 'per capita' and 'per stirpes' describe the mode of distributing an estate rather than the designation of the persons who will share the estate."); *c.f. Doramus v. Rogers Grp., Inc.*, No. M1998-00918-COA-R3-CV, 2001 WL 196974, at *5 (Tenn. Ct. App. Feb. 28, 2001) (analogizing to *Wright* to explain that a "lease's description of how the members . . . will hold the property, as joint tenants, does not modify the lease's description of those persons who are eligible to become members of that class," and holding that granddaughters could only acquire an interest under said lease if, among other things, "their mother . . . predecease[s]" them). Under the facts as presented in this appeal, Second-Generation Descendants, who were certainly eligible to take Trust funds under the proper circumstances, cannot take any funds at this specific juncture, as both of their parents, the

First-Generation Descendants, were not deceased at the time the Deceased died. Neither *Wright* nor Tennessee law support interpreting the word "descendants" in isolation and to the detriment of Testator's express wish for the Trust funds to descend "per stirpes." *See, e.g., White*, 159 S.W.2d at 94 (declining to interpret the word "issue" so broadly as to enact a per capita distribution system). Though Trustee objects to this characterization of his argument, it is worth noting that Trustee presents no line of argumentation in his brief that explains how the probate court should have given effect to the phrase "per stirpes." His argument looks past the phrase "per stirpes" in favor of a universal split of Trust funds without explaining what value, if any, the phrase "per stirpes" would have in the will under his interpretation.

Here, the Testator clearly chose a per stirpes distribution scheme, not per capita. Article Eight, Section C invokes such a system explicitly, and Article Eighteen clarifies not only that the will should be implemented according to Tennessee law but also specifically that the distribution of funds to any "descendant" begins at the level of the children of the deceased, which is the First-Generation Descendants. We agree with the probate court that, under the chosen system, only the First-Generation Descendants are entitled to take shares of the remaining Trust principal. Accordingly, we affirm the trial court's decision.[4]

## IV.

The First-Generation Descendants separately request, regardless of our ultimate decision on how the Trust funds ought to be distributed, that we award them attorney's fees on appeal. The First-Generation Descendants assert that Trustee brought this appeal in bad faith and request that this court prevent the loss of "tens of thousands of dollars" in Trust funds. The First-Generation Descendants' substantive argument is that Trustee owed the beneficiaries a fiduciary duty of loyalty, and that "[b]y hiring himself to represent the trust, [Trustee] placed himself in a position where he could easily benefit himself by violating his duty to the beneficiaries . . . [and taking] unreasonable positions in an effort to enrich himself at the expense of the trust and its beneficiaries." (citing *In re Estate of Wakefield*, No. M1998-00921-COA-R3-CV, 2001 WL 1566117, at *16 (Tenn. Ct. App. Dec. 10, 2001) ("[The fiduciary element] is peculiarly intense in the case of a trust. It is the duty of a trustee to administer the trust solely in the interest of the beneficiaries. He is not permitted to place himself in a position where it would be for his own benefit to violate his duty to the beneficiaries." (quoting Austin Wakeman Scott & William Franklin Fratcher, The Law of Trusts § 170, at 311 (4th ed. 1988))). The First-Generation Descendants recognize that their request "largely fall[s] outside the purview of this Court," as it requires us to assess a

---

[4] While Trustee also requested that we review the probate court's denial of his request to amend the complaint to add the Second-Generation Descendants as parties and to appoint a guardian ad litem to represent their interests, our decision to affirm the probate court's original holding that precludes them from taking shares of the Trust leads to pretermitting this issue.

violation of fiduciary duty firsthand, but they insist that "the bad faith underpinning this entire lawsuit, including this appeal, is adequate grounds to award Appellees attorneys' fees on appeal."

This court does not have a finding from the probate court regarding whether Trustee acted in bad faith upon which to base an award of attorney's fees. While it appears that there may have, at one point, been an attempt by the First-Generation Descendants to present this line of argumentation in the probate court, the probate court's final order clearly states that the parties unanimously withdrew all "requests for attorney fees" from consideration after the procedurally defunct appeal was dismissed, in hopes of accelerating the timeline for receiving a final, appealable order. The probate court not addressing whether Trustee acted in bad faith is a direct result of First-Generation Descendants' decision to withdraw their request for attorney's fees from consideration. Furthermore, the First-Generation Descendants fail to reference the statutory basis for or rule supporting their request. *See Charles v. McQueen*, 693 S.W.3d 262, 284 (Tenn. 2024) ("[A]n appellee is required to present the request [for attorney's fees] to the appellate court by raising it in the body of the brief, *adequately developing the argument*, and specifying that relief in the brief's conclusion." (emphasis added)); *Eberbach v. Eberbach*, 535 S.W.3d 467, 474 (Tenn. 2017) (explaining that absent "'(1) a contractual or statutory provision creat[ing] a right to recover attorney's fees; or (2) some other recognized exception to the American Rule [that] applies' . . . litigants are responsible for their own attorney's fees." (quoting *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308-09 (Tenn. 2009))). Assuming such an award could be appropriate, in the absence of a finding by the trial court or an adequate foundation grounded upon the record to support their contention of bad faith, we deny their request.

V.

In considering the arguments advanced on appeal and for the reasons discussed above, we affirm the judgment of the probate court. The costs of the appeal are taxed to the appellant, John E. Sullivan, Jr. GST Exempt Trust, David M. Sullivan, Trustee, for which execution may issue if necessary. The case is remanded for such further proceedings as may be necessary and consistent with this opinion.

s/ Jeffrey Usman
JEFFREY USMAN, JUDGE