Dorothy W. STICKLEY and Bobbie W. Thomas, Plaintiffs–Appellees,

v.

Patricia W. CARMICHAEL, Defendant–Appellant.

Supreme Court of Tennessee, at Knoxville.

May 11, 1992.

Rehearing Denied June 22, 1992.

Charles G. Taylor, III, McDonald, Levy & Taylor, Knoxville, for defendant-appellant.

Arthur G. Seymour, Jr., Robert L. Kahn, Frantz, McConnell & Seymour, Knoxville, for plaintiffs-appellees.

## OPINION

ANDERSON, Justice.

In this will construction action, we granted the application for permission to appeal in order to determine the testatrix's intent with respect to extra shares that resulted from a stock split that occurred after the will was executed and before the testatrix's death. The determinative issue is whether the testatrix intended for the additional split shares of stock to pass to the three named legatees of the original shares, or whether the testatrix intended for the extra shares to pass under the residuary clause to the defendant alone.

At the first trial, the trial court sustained the defendant's motion to dismiss and found that the testatrix intended for the extra split shares to go to the defendant under the residuary clause. The Court of Appeals reversed, concluding that the testatrix had made a specific bequest, rather than a general bequest, and as a result, the extra shares passed to the three named legatees in the same proportion as the original shares. On appeal, this Court remanded the case to the trial court "for the taking of additional proof," because we found that the defendant had not waived the right to present evidence by making a

motion to dismiss at the close of the plaintiff's proof.

On remand, at the second trial, part of the defendant's proof was statements made by the testatrix after the will was executed tending to show that she intended for the additional shares to pass to the defendant residuary legatee. The trial court held that the testatrix had made a specific bequest entitling the three named legatees to the additional split shares in the same proportion as the original shares, and also held that the extrinsic evidence of the testatrix's intent after the execution of the will was not admissible to contradict the will. The Court of Appeals affirmed.

■ Today, we adopt a rule of construction that, absent any indication to the contrary, it is presumed a testator intends to give named legatees proportionate interests in a corporation when all of the shares that are owned at the time the will is executed are bequeathed. Consistent with that rule, we conclude that the testatrix here intended for the additional split shares to pass to the named legatees in the same proportion as the shares listed in the will. We therefore affirm the result reached by the Court of Appeals, based on the separate grounds set out herein.

## BACKGROUND

On February 29, 1984, Jessie K. Worthington executed a will dividing her property among her two step-daughters, the plaintiffs Dorothy W. Stickley and Bobbie W. Thomas, and her natural daughter, the defendant Patricia W. Carmichael. The pertinent parts of her will provided:

Item V.

I presently own 7748 [1] shares of stock in R.J. Reynolds Industries, and I give and bequeath same as follows:

  a. To my daughter, Patricia W. Carmichael, 2581 shares of said stock.

  b. To my daughter, Dorothy W. Stickley, 2586 shares of said stock.

  c. To my daughter, Bobby W. Thomas, 2581 shares of said stock.

The will's residuary clause provided:

Item VI.

I give, devise and bequeath the rest, residue and remainder of my estate, of whatsoever kind and nature, and wheresoever situated, to my daughter, Patricia W. Carmichael. I have complete confidence that she will care for my mother, Margaret F. Wrinkle, provided my mother survives me, and I also have complete confidence that my said daughter will use and dispose of such part of my estate in a manner which would be pleasing and satisfactory to me. In the event my said daughter does not survive me, then I give, devise and bequeath any property which my said daughter might be entitled to under any of the terms and provisions of this will to my grandsons, Michael Scott Carmichael and Brett Worthington Carmichael.

In 1985, after Jessie Worthington had executed her will, R.J. Reynolds Industries split its stock, issuing two and one-half new shares for every existing share. She was notified of the stock split by letter dated May 28, 1985, and received the extra 11,472 shares a few weeks later in June of 1985. As a result of the stock split, Jessie Worthington owned 19,120 shares of R.J. Reynolds stock at the time of her death in June of 1986, rather than the 7,648 shares provided for in the will.

Although all three daughters had been appointed and agreed to be executors of their mother's estate, they could not agree on how the extra 11,472 shares of stock should be distributed. As a result, the step-daughters, Stickley and Thomas, filed a declaratory judgment action in the Knox County Chancery Court, contending that the testatrix intended for the extra shares to pass on to the three legatees named in Item V of the will in the same proportion as the shares listed in the will. The natural daughter, Carmichael, contended that the testatrix intended for only the specifi-

---

**1.** The evidence produced at trial revealed that the testatrix owned only 7,648 shares of R.J. Reynolds stock at the time she executed her will. This mathematical error is not material to the issues.

cally listed shares to pass under Item V, and that the extra shares should come to her under Item VI, the residuary clause.

At the trial, the plaintiff Bobbie Thomas testified that her natural mother died in 1939 and that her father, R.B. Worthington, married Jessie a short time later, when Thomas was nine and Stickley was sixteen. Thomas called Jessie Worthington "mother" because, although she was not related by blood, she considered her to be her mother since she had been raised by her from the time she was nine years old. Thomas said that after her father died in 1976, she continued to maintain a good relationship with the testatrix during the last ten years of her life.

With respect to the stock, Thomas testified that her father began acquiring it while he was working for R.J. Reynolds as a division manager. R.B. Worthington worked for R.J. Reynolds beginning in the 1920s until he retired in the early 1960s. Thomas also testified it was always her understanding that her father wanted the three daughters to have the R.J. Reynolds stock, and that Jessie Worthington told her after his death that she intended to follow his wishes.

When R.B. Worthington died in 1976, he owned 5,404 shares of R.J. Reynolds stock. His will left his wife, Jessie, all his property but provided if Jessie did not survive him, that the family farm and R.J. Reynolds stock would be divided between the three daughters, with Dorothy Stickley receiving four more stock shares than the other two children.

Earl Rainwater, the attorney who drafted Mrs. Worthington's will, testified that he had drafted a will for Mrs. Worthington in 1974, whereby she divided the family farm and the R.J. Reynolds stock between the three daughters. Rainwater said all existing R.J. Reynolds stock was divided in the 1974 will as follows: 1804 shares to Stickley, 1800 shares to Thomas, and 1800 shares to Carmichael.

Rainwater testified that in drawing up the 1984 will, he noted that there was a significant increase in the number of R.J. Reynolds shares, as compared to the 1974 will. When he asked where the testatrix acquired the extra shares, she told him they came from a stock split declared by R.J. Reynolds. With respect to the testatrix's disposition of the shares in the 1984 will, Rainwater testified that the testatrix gave him specific instructions to use the numbers in her handwritten notes, and that the bequest included all the R.J. Reynolds stock she then owned.

Howard F. Johnston, a stock broker, testified that a stock split is merely an increase in the number of shares outstanding without any financial gain to the company in the sense that they take in more money or sell new shares. Johnston also explained that a stock split does not result in the stockholder acquiring a greater proportionate interest in the company, but does result in each individual share being worth a smaller amount dependent upon the ratio of the stock split. After looking at the stock records, Johnston testified that R.J. Reynolds had declared two stock splits since the 1974 will, once in December of 1979 and once in May of 1985.

At the close of the plaintiffs' proof, the trial court sustained a motion to dismiss the complaint based upon this Court's opinion in *Davis v. Price*, 189 Tenn. (25 Beeler) 555, 226 S.W.2d 290 (1949). Although the Chancellor noted that his impression at the outset of the case "was that Mrs. Worthington clearly had the intent to treat the three daughters, as she described them, equally," he found that the testatrix had specifically divided the shares that she "presently owned" with knowledge that there could be future stock splits. The trial court found that the extra shares should pass under the residuary clause, because the testatrix's intent at the time she drew the will was to provide in Item V of the will only for a division of the stock she then owned.

On appeal, the Court of Appeals reversed and remanded to the trial court, with instructions to enter a judgment for the plaintiffs. The Court of Appeals found that the testatrix had made a specific bequest, rather than a general bequest as in *Davis v. Price*, and accordingly that the

extra shares from the stock split pass to the three named legatees in the same proportion as the 7,648 shares listed in the will.

This Court granted an application to appeal and issued a per curiam opinion which reversed the Court of Appeals' decision on procedural grounds, because a defendant does not waive the right to present evidence by making a motion to dismiss at the close of a plaintiff's proof. We remanded the case to the trial court for the taking of additional proof.

On remand to the trial court, parol evidence was introduced by the defendant that the testatrix intended for the extra shares to pass to the defendant under the residuary clause, and that the testatrix wanted the extra shares to be used to care for her mother, Margaret F. Wrinkle, and for her grandsons' college education. The Chancellor applied the rules of construction required by the previous Court of Appeals opinion, found that the testatrix had made a specific bequest of her stock and that the extra shares therefore passed to the three named legatees under Item V of the will in the same proportion as the listed shares, and held that the parol proof of the testatrix's intent was not admissible to contradict the specific bequest.

On appeal, the Court of Appeals adopted the findings of the trial court and affirmed.

### INTENTION OF THE TESTATRIX

We are required in this appeal to determine what the testatrix intended in her will when she divided the shares she "presently own[ed]" in specific numbers between her two step-daughters and her natural daughter. The plaintiffs contend that Item V of the testatrix's will clearly indicates that the testatrix intended to give away her entire interest in R.J. Reynolds Industries in proportionate shares. The defendant, on the other hand, contends that the testatrix knew about the possibility of a future stock split and that Item V shows the testatrix intended to divide only the shares she "presently owned" between the daughters.

The defendant contends that this case is controlled by *Davis v. Price*, 189 Tenn. (25

Beeler) 555, 226 S.W.2d 290 (1949). In *Davis*, the testator executed a will in 1943, that contained a bequest to his granddaughter for five hundred (500) shares of common stock in The Southern Chemical Cotton Company. In October of 1948, almost a month prior to the testator's death, Southern Chemical Cotton Company declared a two for one stock split. As a result, the question presented in *Davis* was whether, the granddaughter takes five hundred (500) shares of stock in the Southern Chemical Cotton Company as they were at the time of the death of the testator, or whether she takes one thousand, five hundred (1500) shares of stock, which includes the one thousand (1000) shares of the stock dividend resulting from the stock split made in October 1948.

The Court held that the question was controlled by Code Section 8133, currently Tenn.Code Ann. § 32–3–101 (1984), which provides:

**Operation of will.**—A will shall be construed, in reference to the real and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator, and shall convey all the real estate belonging to him, or in which he had any interest at his decease, unless a contrary intention appears by its words in context.

In construing the will as if it had been written immediately prior to the testator's death (and after the stock split), the Court found that the extra shares resulting from the stock split did not follow the specifically listed shares, but instead passed to the residuary legatee. The Court found no evidence that the testator wanted to give the granddaughter fractional ownership of the corporation.

The plaintiffs contend that the Court of Appeals correctly held that *Davis* is not applicable to this case because it involved a general bequest, whereas this case involves a specific bequest. The rule of construction applied by the Court of Appeals where there is a specific bequest, is "that additional shares of stock acquired by a testator as a result of a stock split, after the execution of a will and before the date of

his death, pass proportionately under a *specific* bequest of the original shares." *Warner v. Baylor*, 204 Va. 867, 876, 134 S.E.2d 263, 267 (1964) (emphasis in original). The rationale of this rule of construction is that a specific bequest, as opposed to a general bequest, "shows an intent to bequeath the proportional interests owned in the corporations at the time of execution of the will." *Id.*

As the Virginia Supreme Court explained in *Warner:*

> The rationale of the line of cases which rely on the specific or general nature of the bequest to ascertain testatrix's intent is based upon § 24 of the English Will Act of 1837, 4 & 1 Vict.C. 26, which codified the common law rule that a will speaks as of the date of the death of the testator unless a contrary intention appears in the will. Under this statute, ... the English cases have held that a bequest of a stated number of shares of stock, which was later split and resulted in the testator receiving additional shares after the execution of his will and before his death, was a general bequest, and the legatee was not entitled to the additional shares. *In re Gillins* (1909), 1 Ch. 345; *In re McAfee* (1909), 1 Ir.R. 124. The courts reasoned that a will refers to the estate of the testator as it existed at the time of his death. But under this statute the English courts have also held that where a bequest is *specific* it shows an intention contrary to the statutory rule, and a will is construed as referring to the interests represented by shares of stock held at the date of execution and the legatees take the additional shares in the new form.

*Id.*, 134 S.E.2d at 269 (citations omitted) (emphasis in original).

Courts have used different approaches in arriving at a testator's intent when confronted with the issue of who takes additional shares of stock resulting from a stock split occurring after the will was executed, but before the testator's death. Many courts in the past have utilized the more traditional formalistic view the Court of Appeals adopted in this case, which is

based upon the specific or general nature of the bequest, while other courts regard the general or specific classification as immaterial, looking instead to other indicia of the testator's intent. *See* J.R. Kemper, Annotation, *Change in Stock or Corporate Structure, or Split or Substitution of Stock of Corporation, as Affecting Bequest of Stock*, 46 A.L.R.3d 7, 19 (1972); *Warner v. Baylor*, 204 Va. 867, 134 S.E.2d 263 (1964).

Since *Warner* was decided, "[a]n increasing number of courts ... have departed from the older 'specific-general' bequest approach, and instead base their holdings on the perceived intention of the testator with respect to the split shares." *Rosenfeld v. Frank*, 208 Conn. 562, 572, 546 A.2d 236, 241, n. 4 (1988) (citations omitted). One example of this trend is *Bostwick v. Hurstel*, 364 Mass. 282, 304 N.E.2d 186 (1973), a case in which the Supreme Judicial Court of Massachusetts determined that "the problems created by the use of the distinction between general and specific legacies in the stock split situation far outweigh any advantages it might have." *Id.*, 364 Mass. at 287, 304 N.E.2d at 189. The court reasoned that the approach of first labeling a gift as specific or general and then applying automatic consequences based upon the labels "fails to consider the testator's intent with specific reference to the additional shares created by a stock split and ... it also fails to recognize the basic nature of a stock split." *Id.*

The *Bostwick* court went on to adopt the rule of construction " 'that it is presumed that the prime intent of the testator is that the legatee is to benefit from any increased shares coming by way of a stock split provided no contrary intent is evident in the will.' " *Id.*, 364 Mass. at 289, 304 N.E.2d at 190 (quoting *Egavian v. Egavian*, 102 R.I. 740, 747–48, 232 A.2d 789, 794 (1967)). The rationale behind such a rule of construction is that the additional shares created by a stock split merely indicate a change in form rather than a change of the shareholder's proportionate interest in the corporation, and it is doubtful that the testator intended to subject his bequest to change by subsequent corporate actions over which he had

probably little or no control. *Id.*, 364 Mass. at 291–92, 304 N.E.2d at 191.

■ We find the reasoning of *Bostwick* persuasive that a court should seek to ascertain the intention of the testator, rather than merely label a bequest and automatically reach a result based upon the label, because "[t]he cardinal and basic rule in the construction of wills is that the court shall seek to discover the intention of the testator, and will give effect to it unless it contravenes some rule of law or public policy." *Bell v. Shannon*, 212 Tenn. (16 McCanless) 28, 40, 367 S.W.2d 761, 766 (1963). We therefore adopt the rule of construction followed by the *Bostwick* court "that, in the absence of anything manifesting a contrary intent, a legatee of a bequest of stock is entitled to the additional shares received by a testator as a result of a stock split occurring in the interval between the execution of his will and his death." *Id.*, 364 Mass. at 292, 304 N.E.2d at 192.

In applying this rule and ascertaining the testator's intent, "it is necessary to look to the entire will and codicil, if any, and not to isolated parts, and the testator's intention must be determined from what he has written and not from what it is supposed he intended." *Martin v. Taylor*, 521 S.W.2d 581, 584 (Tenn.1975) (citing *Burdick v. Gilpin*, 205 Tenn. (9 McCanless) 94, 325 S.W.2d 547 (1959)). In addition, the testator's intention "is to be ascertained from the particular words used, from the context, and from the general scope and purpose of the will, read in light of the surrounding and attending circumstances." *Moore v. Neely*, 212 Tenn. 496, 502–03, 370 S.W.2d 537, 540 (1963).

■ On remand, the evidence introduced at the first trial by the plaintiffs of the surrounding circumstances was stipulated. The defendant then introduced evidence of the testatrix's intent after the execution of the will, which the trial court considered and rejected on the theory that the specific bequest rule construction controlled, and that parol evidence is not admissible to contradict the language in the will or to change its meaning and effect. Parol evidence is generally inadmissible to add to, vary, or contradict language used in a will, although it is admissible to explain a latent ambiguity. *See Fariss v. Bry–Block Co., Inc.*, 208 Tenn. (12 McCanless) 482, 346 S.W.2d 705 (1961); *Treanor v. Treanor*, 25 Tenn.App. 133, 152 S.W.2d 1038 (1941). Since we have determined here that the testatrix's intent may be determined from the will and the surrounding circumstances, the will is not ambiguous, and the defendant's parol evidence is not admissible.

■ Applying the above rules of construction, we conclude that Jessie Worthington intended for the additional shares of stock created by the stock split to pass to all the daughters in the same proportion as the shares listed in the will. She bequeathed all the shares she owned at the time the will was executed. This evidences an intent to give the three daughters proportionate interests in R.J. Reynolds Industries, and there is nothing in the will to indicate a contrary intention on her part.

Because we have found that the testatrix intended for the extra shares to pass to the three named legatees in the same proportion as the original shares listed in Item V of the will, the rule of construction of Tenn.Code Ann. § 32–3–101 (1984) does not apply.

Accordingly, we hold that the plaintiffs and the defendant, as named legatees, are entitled to the extra shares of R.J. Reynolds stock created by the stock split in the same proportion as the shares listed under Item V of the will. We accordingly affirm the judgment of the Court of Appeals, based on the separate grounds set out herein. The costs of this appeal are taxed to the defendant.

REID, C.J., and DROWOTA, O'BRIEN and DAUGHTREY, JJ., concur.