# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
August 7, 2013 Session

## TENNESSEE ASPHALT COMPANY v. BRIAN FULTZ

**Appeal from the Chancery Court for Knox County**
**No. 1811593     Hon. Michael W. Moyers, Chancellor**

---

### No. E2013-00240-COA-R3-CV-FILED-SEPTEMBER 20, 2013

---

This is a breach of contract case in which Company sought to hold Defendant personally liable for the amount remaining on a contract. During Company's proof-in-chief, Defendant used parol evidence attempting to show that while he signed the contract, the parties understood that he was signing as a representative of his business. Following Company's presentation of its proof, Defendant moved for involuntary dismissal pursuant to Rule 41 of the Tennessee Rules of Civil Procedure. The trial court granted Defendant's motion, finding that Company failed to establish that Defendant was personally liable. Company appeals. We affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., P.J., and THOMAS R. FRIERSON, II, J., joined.

Dale Bohannon, Cookeville, Tennessee, for the appellant, Tennessee Asphalt Company.

Edward J. Shultz, Knoxville, Tennessee, for the appellee, Brian Fultz.

## OPINION

### I.  BACKGROUND

Brian Fultz ("Defendant"), through his construction company Fultz Holdings, LLC ("Fultz Holdings"), was building Briarcliff Subdivision ("Briarcliff") in Harrogate, Tennessee. Defendant contracted with Tennessee Asphalt Company ("Company") to grade and pave the roads and to install water and sewer lines for Briarcliff. The initial agreement

consisted of four estimates, which Defendant signed without any mention of Fultz Holdings. The first estimate related to the grading of the property, the second and third estimates related to the installation of water and sewer lines, and the fourth estimate related to the paving of the property. The Company submitted five change orders and several applications for payment. Each change order and application for payment was addressed to Fultz Holdings. The site drawings for the project also listed Fultz Holdings as the owner of the property. As the work progressed, Defendant became unhappy with the work and eventually refused to submit the amount allegedly remaining on the contract, namely $40,125.

Company filed suit, alleging that Defendant was personally liable for the amount remaining on the contract, prejudgment interest, and attorney fees. Defendant admitted signing the estimates but asserted that he was not personally liable because he intended to contract with Company as Fultz Holdings. He alternatively asserted that neither he nor Fultz Holdings were liable for any amount remaining pursuant to the contract because Company "failed to correct defects in work it performed pursuant to the contract."

The case proceeded to trial, where several witnesses testified. Brad Cabbage, a grading estimator for Company, testified that he was responsible for meeting with customers, preparing bids, and billing. He stated that he met with Defendant to discuss grading the roads and getting "everything ready for the installation of stone and asphalt and curb." He prepared an estimate that listed Defendant as the purchaser, referred to the site drawings, and detailed the work that was to be performed and the price for the labor and materials. He stated that in lieu of producing a separate contract, Company required customers to either sign the estimate or generate a separate contract for attachment to the estimate. He claimed that Defendant signed the estimate on August 21, 2007. He asserted that he continually met with Defendant, who never mentioned the involvement of Fultz Holdings.

Mr. Cabbage testified that Defendant also asked him to install the water and sewer lines. He related that while Company did not normally provide those services, he hired a separate company to complete the project. He prepared two additional estimates that listed Defendant as the purchaser, referred to the site drawings, and detailed the work that was to be performed and the price for the labor and materials. Defendant signed the estimates on September 17, 2007. Approximately one month later, he met with Defendant to discuss changes to the project. As a result of the meeting, someone in his office prepared a change order. Further meetings with Defendant led to three additional change orders. Neither party signed the four change orders, which listed Fultz Holdings as the owner and Company as the contractor.

Mr. Cabbage conceded that in preparing his estimates, he referred to Defendant's site drawings, which listed Fultz Holdings as owner and Defendant as the person to contact. He

acknowledged that the applications for payment also listed Fultz Holdings as owner and that Company never billed Defendant personally.

Kelly McCartt, who was employed by Company as an estimator, testified that he worked with Defendant regarding the base and paving of Briarcliff. He admitted that he prepared an estimate that referred to the site plans and was signed by Defendant on August 22, 2007. He also altered the terms of the original estimate with a change order that was addressed to "Fultz Holdings Inc." and signed by Defendant as follows:

/s/ Brian Fultz
Brian Fultz, Fultz Holdings Inc.

Likewise, he sent three letters to Defendant that also referred to "Fultz Holdings Inc." He insisted that he "always dealt with" Defendant, but he conceded that the application for payment, the work order, and the final invoice listed Fultz Holdings as owner of the property.

Phil Brown, Vice President of Company, testified that he was responsible for collecting "old receivables." He identified the summary of open accounts prepared by his office and admitted that according to the document, Fultz Holdings was liable for the amount remaining on the contract.

At the close of Company's case, Defendant moved for involuntary dismissal, arguing that Company had failed to prove that he was a party to the contract. He admitted that he failed to indicate on the estimates that he was signing in his representative capacity but asserted that the parol evidence rule did not prohibit the introduction of additional documents to correctly identify the parties to the contract. The trial court agreed, finding that the estimates did not constitute the entirety of the contract when the change orders altered the terms and when the contract could not be fulfilled without referring to the site drawings, which were specifically referenced in the estimates. The court found that the addition of the change orders and the site drawings to the contract created an ambiguity as to the identify of the party with whom Company had contracted. The court held that it was necessary to consider additional documentation to ascertain the relationship between the parties and the identity of those involved. In consideration of the additional evidence, the court stated, that

> the actual course of dealings and intent of the parties was that [Fultz Holdings] was the party with whom [Company] had contracted, and from whom [Company] expected to be paid.

The court dismissed the complaint against Defendant. This timely appeal followed.

## II. ISSUE

We consolidate and restate the issues raised on appeal as follows:

Whether the trial court erred in holding that Defendant was not personally liable for the remaining amount due on the contract.

## III. STANDARD OF REVIEW

The Tennessee Rules of Civil Procedure provide for involuntary dismissal as follows:

After the plaintiff in an action tried by the court without a jury has completed the presentation of plaintiff's evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court shall reserve ruling until all parties alleging fault against any other party have presented their respective proof-in-chief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court grants the motion for involuntary dismissal, the court shall find the facts specially and shall state separately its conclusion of law and direct the entry of the appropriate judgment.

Tenn. R. Civ. P. 41.02(2). "When a motion to dismiss is made at the close of plaintiff's proof in a nonjury case, the trial court evaluates the case in the same manner as though the trial court were making findings of fact at the conclusion of all evidence for both parties." *Cole v. Clifton*, 833 S.W.2d 75, 77 (Tenn. Ct. App. 1992) (citing *City of Columbia v. C.F.W. Const. Co.*, 557 S.W.2d 734, 740 (Tenn. 1977)). "If the plaintiff has failed to prove his [or her] case by a preponderance of the evidence, the trial court may render a judgment on the merits for [the] defendant." *Id.* (citing *Brewer v. Haynes*, 681 S.W.2d 551, 552 (Tenn. Ct. App. 1984)). On appeal, the court's decision is subject to a de novo review, "with a presumption of the correctness of the judgment unless the preponderance of the evidence is otherwise." *Id.* However, the interpretation of written agreements is a matter of law, which this court reviews de novo without a presumption of correctness. *See Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999).

## IV. DISCUSSION

Company contends that the trial court erred in dismissing the case after erroneously finding that Defendant was not personally liable. Company asserts that the court erroneously considered parol evidence because the estimates, which comprised the contract, were "complete, unambiguous, and contain[ed] no reference that [Defendant's] signature was made in a representative capacity." Company claims that the unsigned change orders merely documented additional work that was to be performed pursuant to the original estimates, which had been signed in Defendant's individual capacity. Defendant responds that an ambiguity concerning the identity of the party with whom Company contracted exists in the contract, which consisted of the four estimates, the five change orders, and the site plans. He claims that the trial court did not err in considering parol evidence to identify the parties to the contract and in ultimately holding that he was not personally liable.

A contract, either written or oral, "must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced." *Higgins v. Oil, Chem. and Atomic Workers Int'l Union*, 811 S.W.2d 875, 879 (Tenn. 1991) (internal quotation and citation omitted). Generally, once a contract is formed it cannot be modified without consent and additional consideration for the new terms. *GuestHouse Intern., LLC v. Shoney's North America Corp.*, 330 S.W.3d 166, 190 (Tenn. Ct. App. 2010). In this case, the five change orders were an agreed-upon modification of the estimates that comprised the original contract. Likewise, the contract could not be completed without reference to the site plans, which expanded upon the agreement reached between the parties and delineated the work to be done by Company. The change orders, the site plans, and the estimates must be construed together in attempting to ascertain and give effect to the intention of the contracting parties.

Indeed, the cardinal rule of contract interpretation is that the court must attempt to ascertain and give effect to the intention of the parties. *Christenberry v. Tipton*, 160 S.W.3d 487, 494 (Tenn. 2005). In attempting to ascertain the intent of the parties, the court must examine the language of the contract, giving each word its usual, natural, and ordinary meaning. *See Wilson v. Moore*, 929 S.W.2d 367, 373 (Tenn. Ct. App. 1996). The court's initial task in construing the contract is to determine whether the language is ambiguous. *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 889-90 (Tenn. 2002). A contract is ambiguous if its meaning is uncertain and is susceptible to more than one reasonable interpretation. *See Bonastia v. Berman Bros.*, 914 F.Supp. 1533, 1537 (W.D. Tenn. 1995); *Frank Rudy Heirs Assocs. v. Moore & Assocs., Inc.*, 919 S.W.2d 609, 613 (Tenn. Ct. App.1995); *Gredig v. Tennessee Farmers Mut. Ins. Co.*, 891 S.W.2d 909, 912 (Tenn. Ct. App. 1994). If we determine that the language of a contract is ambiguous, we

construe the ambiguity against the drafter of the contract. *See Hanover Ins. Co. v. Haney*, 425 S.W.2d 590, 592 (Tenn. 1968); *Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d 581, 598 (Tenn. Ct. App. 1999).

Ordinarily, the parol evidence rule would prevent a party to a written contract from contradicting the terms of the contract by seeking the admission of "extrinsic" evidence. *See, e.g.*, *Maddox v. Webb Constr. Co.*, 562 S.W.2d 198, 201 (Tenn. 1978); *Airline Constr., Inc. v. Barr*, 807 S.W.2d 247, 259 (Tenn. Ct. App. 1990). Parol evidence is inadmissible to add to, vary, or contradict contract language. *Stickley v. Carmichael*, 850 S.W.2d 127, 132 (Tenn. 1992). "[I]t is generally agreed that the admissibility of parol evidence to prove the intent of the signatory hinges on whether the instrument itself manifests some ambiguity. *Campora v. Ford*, 1124 S.W.3d 624, 629 (Tenn. Ct. App. 2003) (citing *United American Bank v. First Citizens Nat'l Bank*, 764 S.W.2d 555 (Tenn. Ct.App. 1988)). In general terms, an ambiguity occurs where a word or phrase is capable of more than one meaning when viewed in the context of the entire agreement by an objective and reasonable person. *Id.* (citing *Walk-in Medical Ctrs., Inc. v. Breuer Capital Corp.*, 818 F.2d 260, 263 (2d Cir. 1987)).

We agree with the trial court that an ambiguity exists regarding the identity of one of the parties to the contract because some of the documents that comprised the contract identified the parties as Company and Fultz Holdings without mention of Defendant, while others identified the parties as Defendant and Company without mention of Fultz Holdings. Accordingly, we hold that the trial court did not err in admitting extrinsic evidence regarding the intent of the parties concerning which party was responsible to Company for fulfilling the terms of the contract. Following our review of the extrinsic evidence, we further hold that the trial court did not err in dismissing the complaint against Defendant when the documents reflect that the parties intended to establish a contract between Company and Fultz Holdings and that Company expected payment from Fultz Holdings, not Defendant.

## V.  CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Tennessee Asphalt Company.

_____
JOHN W. McCLARTY, JUDGE