IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 9, 2016 Session

## DUSTIN SCOTT ROBERTS v. WILLIAM R. RAY

**Appeal from the Circuit Court for Knox County**
**No. 11114      Hon. Kristi M. Davis, Judge**

---

**No. E2015-01522-COA-R3-CV-FILED-APRIL 13, 2016**

---

This is a legal malpractice action in which the plaintiff alleged that the defendant attorney failed to conform to the applicable standard of care in drafting a prenuptial agreement. The trial court granted the defendant attorney's motion for summary judgment. The plaintiff appeals. We reverse and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J. and ANDY D. BENNETT, J., joined.

Kimberly R. Taylor, Knoxville, Tennessee, for the appellant, Dustin Scott Roberts.

Jason H. Long, Knoxville, Tennessee, for the appellee, William R. Ray.

## OPINION

## I.      BACKGROUND

In 2006, Dustin Scott Roberts ("Plaintiff") entered into a contract with William R. Ray ("Defendant") for the preparation and execution of a prenuptial agreement ("the Agreement") in anticipation of his upcoming wedding with Amy Freeman ("Wife"). Defendant drafted the Agreement, in which the parties waived any potential claim for alimony, identified their separate property, and stated their intent to keep property and debt separate. The Agreement contained the following disclaimer:

> Each party declares and acknowledges that there has been a full and
> complete disclosure of the assets of each party, to the other party, as shown
> in Exhibit "A" attached. Each party acknowledges that he or she knows

and understands the value of the property and the legal and moral consequences of this Agreement, and the legal and moral consequences of this release of the rights in the property. Dustin and Amy declare that they have been advised that they have the right to have this Agreement examined by an attorney, tax advisor, or other counselor of his/her choice. Each party does not desire or does not want any rights in the property, whether acquired before marriage, or during marriage, owned and titled in the name of the other party. The assets of each party are attached in Exhibit "A" hereto.

Exhibit A listed Plaintiff's assets as follows: all U.S. Savings Bonds; Employee 401(k) retirement account; Individualized Retirement Account ("IRA"); brokerage account; and real estate, house, and lot. Likewise, Wife's asset was listed as follows: Employee 401(k) retirement account. Dollar values were not assigned to each asset, and the overall net worth of either party was not provided.

Plaintiff and Wife married on May 22, 2006.[1] One child was born of the marriage. In February 2013, Plaintiff and Wife separated. Thereafter, Plaintiff initiated divorce proceedings. Wife sought pendente lite spousal support in an amount sufficient to enable her to defend against the divorce action with the assistance of counsel. She acknowledged that she had signed the Agreement waiving any claim for spousal support but claimed that the Agreement was invalid because it was not entered into "freely, knowledgeably, in good faith, and without exertion of duress or undue influence." She asserted that a full and fair disclosure of Plaintiff's assets or his overall net worth was not made and that she did not possess independent knowledge of the same pursuant to *Randolph v. Randolph*, 937 S.W.2d 815 (Tenn. 1996).[2] She also claimed that she was never advised of her right to hire independent counsel.

A hearing on the validity of the Agreement and other matters not pertinent to this appeal was held on July 31, 2013. Wife testified that she suggested executing a prenuptial agreement because she did not want Plaintiff's family or friends to believe she was marrying for financial gain. She explained that she was 22 or 23 years old at the time, while Plaintiff was 30 years old and employed as a pharmacist. She first viewed the Agreement in Defendant's office at the time of the signing. She estimated spending approximately 45 minutes in Defendant's office on that day. She claimed that she was

---

[1] Plaintiff and Wife were first married in Jamaica; however, they also participated in a ceremony in the United States on June 18, 2006.

[2] In *Randolph*, the Supreme Court held that the proponent of a prenuptial agreement must establish either (1) a full and fair disclosure of the full nature, extent, and value of the proponent spouse's holdings or (2) a showing that disclosure was unnecessary because the spouse seeking to avoid the agreement had independent knowledge of the full nature, extent, and value of the holdings. 937 S.W.2d at 817, 821-22.

never advised to hire independent counsel and that she believed Defendant represented her and Plaintiff. She did not negotiate the terms of the Agreement or suggest changes.

Wife testified that Plaintiff controlled the finances throughout the marriage and never advised her of his net worth. She agreed that he did not hide statements from her but asserted that she never opened his mail or asked about his various assets. She denied knowledge of the value of the assets. She agreed that she lived in the residence for four months prior to signing the agreement. She also agreed that Plaintiff kept his financial information in a filing cabinet in their office and that she had opened the cabinet and retrieved documents. She explained that she never "pr[ied] through" the cabinet.

Wife testified that she attended real estate school after the marriage. She identified a note in which she advised a fellow student that Plaintiff was not "wealthy" and had debt in the form of student loans but that she knew before the marriage that he had "a lot in stocks" and owned a home in a nice subdivision. She explained that she knew Plaintiff owned stock but asserted that she did not know the value of his assets.

Plaintiff agreed that he selected the attorney but that he also believed that Defendant represented him and Wife. He said that Wife had access to his filing cabinet and that he never prohibited her from viewing the documents in the cabinet. He claimed that she retrieved documents from the cabinet on occasion. He admitted that he was a "fairly private person" and that they had not engaged in specific discussions concerning financial issues prior to signing the Agreement.

Following the hearing, the trial court set aside the Agreement, finding that the Agreement failed to conform to the requirements set forth in *Randolph* because a reasonable disclosure of assets had not been made and because Wife did not possess independent knowledge of the same. The court granted Wife's request for pendente lite support. Plaintiff and Wife later entered into a marital dissolution agreement.

On January 7, 2014, Plaintiff filed the instant legal malpractice complaint while the divorce was still pending but after the Agreement had been set aside. He alleged that Defendant's conduct in drafting the Agreement fell below the applicable standard of care and requested compensatory damages.[3] Defendant denied wrongdoing and asserted that his drafting of the Agreement was not a direct cause of Plaintiff's damages.

---

[3] In discovery, Plaintiff identified the following as compensatory damages: $132,500 paid pursuant to the marital dissolution agreement; $6,127.36 paid for Wife's attorney fees; $9,000 paid to his attorneys in the divorce action; $10,000 paid to his attorneys in the legal malpractice action; $1,625 paid to mediators; and $550 paid to appraise the residence, for a total of $159,802.36. Plaintiff later admitted that his attorney fees incurred to prosecute the malpractice action were not recoverable as compensatory damages.

Defendant sought summary judgment, alleging that he had not deviated from the applicable standard of care because the parties possessed knowledge of one another's assets. He also claimed the damages requested by Plaintiff were speculative. In support of his motion, he attached a statement of undisputed material facts and deposition testimony from himself and Plaintiff taken during discovery for the instant malpractice action. Plaintiff objected to Defendant's request for summary judgment, asserting that genuine issues of material fact remained as to whether Wife possessed independent knowledge of the value of his assets at the time of signing the agreement and as to the extent of his damages. In support of his assertion, he responded to each fact set forth in Defendant's statement and attached the transcript from the divorce proceedings.

Defendant, a 1973 graduate of the University of Tennessee, College of Law, testified by deposition that he was a solo practitioner when Plaintiff requested his assistance in drafting the Agreement in 2006. He further explained that he shared office space with two attorneys who were not affiliated with his practice. He recalled using a standard form from 1993 to draft the Agreement, the first prenuptial agreement he had drafted. He admitted that the Agreement did not contain valuations for each asset and that neither party provided him with valuations. He claimed that "[t]here may have been a discussion . . . before the signing" in which the parties indicated that they knew or "were familiar" with the values of each asset at issue. However, he believed the parties possessed knowledge of the value of the pertinent assets based upon his conversation with them in his office and their familiarity with each other. He asserted that Wife rebuffed his suggestion to secure independent counsel before signing the Agreement.

Plaintiff, a pharmacist, testified by deposition that he initially met Wife when she applied for a position at Walgreens as a pharmacy technician in 2005. Wife was ultimately hired and worked with him until he left to pursue other employment in Knoxville. Several months later, he contacted her to ask for her assistance in arranging a rafting trip. They began dating in November 2005. They had been living together for approximately four months when he contacted Defendant to request assistance in drafting a prenuptial agreement. At that time, she worked at Pier One Imports and spent money she earned as she pleased, while he paid the majority of the bills with income he earned as a pharmacist. He could not recall whether they ever specifically discussed his salary or assets. He provided that he kept his financial information in a filing cabinet that she could have easily accessed. He believed she accessed this information because she always searched the residence to discover the identity of gifts he purchased for her birthday or Christmas. He explained,

> She found every spot that I could have hid something in the house and she
> went through any and every statement that I had and she went through any
> and every e-mail address that I have to find what she was looking for.

He was also "reasonably sure" she had viewed one of his payment stubs.

Plaintiff testified that he compiled a list of his assets and asked Wife to tell him whether she had any assets to include in the list. He could not recall whether Wife asked him any specific questions concerning his assets. He believed she knew the value of his assets because she could have easily accessed his financial information. He stated that Defendant provided them with a draft approximately nine days before they met in Defendant's office to sign the Agreement. He recalled reviewing the document once more to ensure the presence of their assets before signing the Agreement.

Plaintiff testified that he and Wife separated in February 2013. He believed that Wife would have been without the funds to participate in extensive litigation had the court upheld the Agreement.[4] He acknowledged that he did not call Defendant as a witness to the hearing on the validity of the Agreement.

Plaintiff testified that he participated in mediation following the court's rejection of the Agreement on July 31, 2013. He ultimately agreed to a final settlement, despite his belief that Wife was not entitled to any amount based upon her fault for the divorce. He made an initial payment of $10,000 and then paid the remainder from the proceeds of the sale of his residence on May 28, 2014. He provided that the settlement amount was derived by calculating his increase in assets, beginning on the date of marriage. He agreed to the settlement because he feared the cost of further litigation and because he thought she might request alimony beyond the $6,127 he had already provided.

The trial court granted summary judgment, finding that the undisputed material facts negated an essential element of Plaintiff's claim. In so finding, the court held that Defendant had not breached the applicable standard of care because the Agreement was sufficiently drafted in that it provided that the parties possessed knowledge of one another's assets. The court continued that Wife had also signed the Agreement, thereby affirming her knowledge of the assets. This timely appeal followed.

## II. ISSUE

The issue on appeal is whether the trial court erred in granting summary judgment.

---

[4] At the time of the divorce, Plaintiff's income was approximately $140,000 per year, while Wife's was approximately $10,000 per year.

## III.    STANDARD OF REVIEW

The appropriate summary judgment standard to be applied is as follows:

> [W]hen the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense.

*Rye v. Women's Care Center of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015).[5] When a properly supported motion is made, "the nonmoving party 'may not rest upon the mere allegations or denials of [its] pleading,' but must respond, and by affidavits or one of the other means provided in [Rule 56 of the Tennessee Rules of Civil Procedure], 'set forth specific facts' *at the summary judgment stage* 'showing that there is a genuine issue for trial.'" *Id.* at 265 (quoting Tenn. R. Civ. P. 56.06). Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04.

"We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness." *Id.* at 250 (citations omitted). "In doing so, we make a fresh determination of whether the requirements of [Rule 56] have been satisfied." *Id.* (citations omitted). We must view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor. *Martin v. Norfolk S. Ry. Co.,* 271 S.W.3d 76, 84 (Tenn. 2008).

---

[5] We believe the standard set forth in *Rye* is controlling and must be applied retrospectively, despite the legislature's codification of Tennessee Code Annotated section 20-16-101, a similar, if not identical standard which provides as follows:

> [T]he moving party who does not bear the burden of proof at trial shall prevail on its motion for summary judgment if it:
>
> (1)    Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or
>
> (2)    Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

# IV. DISCUSSION

A plaintiff in a legal malpractice action must establish the following elements:

> (1) that the accused attorney owed a duty to the plaintiff, (2) that the attorney breached that duty, (3) that the plaintiff suffered damages, (4) that the breach was the cause in fact of the plaintiff's damages, and (5) that the attorney's negligence was the proximate, or legal, cause of the plaintiff's damages.

*Gibson v. Trant*, 58 S.W.3d 103, 108 (Tenn. 2001) (citations omitted); *Shearon v. Seaman*, 198 S.W.3d 209, 214 (Tenn. Ct. App. 2005) (listing the same elements). "In order to prove damages in a legal malpractice action, a plaintiff must prove that he would have obtained relief in the underlying lawsuit, but for the attorney's malpractice; consequently, the trial of a legal malpractice claim becomes, in effect, a 'trial within a trial.'" *Shearon*, 198 S.W.3d at 214 (quoting *Gibson*, 58 S.W.3d at 108).[6]

Accordingly, we must examine what Plaintiff was required to prove in order to uphold the Agreement in the divorce action. Tennessee Code Annotated section 36-3-501 provides as follows:

> [A] prenuptial agreement entered into by spouses concerning property owned by either spouse before the marriage that is the subject of such agreement shall be binding upon any court having jurisdiction over such spouses and/or such agreement if such agreement is determined, in the discretion of such court, to have been entered into by such spouses freely, knowledgeably and in good faith and without exertion of duress or undue influence upon either spouse. The terms of such agreement shall be enforceable by all remedies available for enforcement of contract terms.

In *Randolph*, the Supreme Court held that the proponent of a prenuptial agreement must prove the knowledgeability requirement by either (1) demonstrating that a full and fair disclosure of the full nature, extent, and value of the proponent spouse's holdings was made or (2) establishing that disclosure was unnecessary because the spouse seeking to avoid the agreement had independent knowledge of the full nature, extent, and value of the holdings. 937 S.W.2d at 817, 821-22.

---

[6] Defendant asserts that Plaintiff cannot establish causation when the court's decision to set aside the prenuptial agreement was not appealed. Defendant did not raise this argument in the trial court. Defendant even admitted that Plaintiff was likely entitled to the return of Wife's attorney fees in the event that the court determined he breached the applicable standard of care. This argument is without merit.

The parties agreed in the divorce action and now in this action that a full and fair disclosure of the holdings was not made. Defendant suggests that Plaintiff's evidence was insufficient to establish a legal malpractice claim when the Agreement established that Wife possessed independent knowledge of the full nature, extent, and value of the holdings. He further claims that the court in the divorce action erred by setting aside the Agreement, a contract which should have been interpreted without consideration of extrinsic evidence. Plaintiff asserts that the court erroneously relied upon the boilerplate language in the Agreement and failed to consider the conflicting testimony in the divorce action in determining whether he set forth sufficient facts to establish that the requirement of knowledgeability was not met.

We agree with Plaintiff. Parol evidence is inadmissible to add to, vary, or contradict contract language. *Stickley v. Carmichael*, 850 S.W.2d 127, 132 (Tenn. 1992). Here, the evidence was not offered to add to, vary, or contradict a term in the contract. Rather, the evidence was offered to establish that Wife did not enter into the contract with the requisite knowledge, thereby invalidating the Agreement pursuant to section 36-3-501 and the Court's decision in *Randolph*. *See Ellis v. Ellis*, E2013-02408-COA-R9-CV, 2014 WL 6662466, at *6-11 (Tenn. Ct. App. Nov. 25, 2014) (invalidating a prenuptial agreement with similar boilerplate language). *But see Williams v. Williams*, 868 S.W.2d 616, 620 (Tenn. Ct. App. 1992) (approving consideration of parol evidence when the prenuptial agreement was ambiguous as to whether the wife had sufficient knowledge of the value of her husband's assets).[7] At issue in the divorce proceeding and now in this "trial within a trial" is whether a valid prenuptial agreement existed. As the Court stated in *Randolph*, "knowledge is simply an element that must be proven to establish the existence of a valid contract." 937 S.W.2d at 821. Section 36-3-501 likewise provides that only agreements that have been entered into "freely, knowledgeably and in good faith and without exertion of duress or undue influence" are "enforceable by all remedies available for enforcement of contract terms."

In determining whether the spouse seeking to avoid the agreement possessed independent knowledge, the Court suggested consideration of the following factors:

> the parties' respective sophistication and experience in business affairs, the
> duration of the relationship prior to the execution of the agreement, the time
> of the signing of the agreement in relation to the time of the wedding, and
> the parties' representation by, or opportunity to consult with, independent
> counsel.

---

[7] In *Williams*, this court did not address the applicability of the parol evidence rule in establishing the knowledge requirement before ruling that consideration of extrinsic evidence was appropriate under the circumstances. 868 S.W.2d at 620.

*Id.* at 822. The record reflects that genuine issues of material fact remain as to whether Wife possessed independent knowledge of the full nature, extent, and value of the holdings as evidenced by the conflicting testimony presented by the parties. Likewise, genuine issues of material fact remain as to whether Defendant breached the applicable standard of care in drafting the Agreement. With these considerations in mind, we conclude that the trial court erred in granting summary judgment. In so concluding, we express no opinion as to whether Defendant actually breached the applicable standard of care or as to the extent of Plaintiff's damages, if any.

## V.     CONCLUSION

We reverse the trial court's grant of summary judgment and remand this matter to the trial court for further proceedings. Costs of the appeal are taxed to the appellee, William R. Ray.

_____
JOHN W. McCLARTY, JUDGE