IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 7, 2021 Session

IN RE ESTATE OF TOM CONE, JR.

Appeal from the Probate Court for Davidson County
No. 15P-2041          D. Randall Kennedy, Judge
_____

No. M2020-01024-COA-R3-CV
_____

A decedent bequeathed his ownership interest in a corporation to his sister. During the decedent's lifetime, the corporate assets were sold, and the corporation terminated. The decedent's widow petitioned the probate court to construe the will. Among other things, she argued that the decedent's gift to his sister had been adeemed by extinction. The probate court granted the widow summary judgment on this issue. Based on the undisputed facts, we conclude that the gift was adeemed by extinction. So we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which ANDY D. BENNETT, J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Charles Michels, Nashville, Tennessee, for the appellant, Susan Ligon.

Michael G. Hoskins, Nashville, Tennessee, for the appellee, Cassandra Cone.

OPINION

I.

A.

Tom Cone, Jr. died on November 6, 2015. His will included a bequest to his sister, Susan Cone Ligon, of "any interest I may own at the time of my death in Cone Solvents, Inc."

After the will was admitted to probate, the decedent's widow petitioned the probate court to declare the gift to Ms. Ligon adeemed by extinction. Prior to the decedent's death, Cone Solvents, Inc. had terminated its corporate existence.

Cone Solvents, Inc. was a family-owned chemical distribution company. When the decedent executed his will, he owned 12.5% of the company stock. The decedent's father, Tom Cone, Sr., and Ms. Ligon owned the remaining shares.

In 2006, the decedent and Don Gadd started a new company, Frontier Logistical Services, LLC. Frontier was a member-managed LLC engaged in the trucking business. Initially, the decedent owned an 85% membership interest while Mr. Gadd owned the remaining 15%. But the decedent controlled 100% of the governance rights.

Four years later, Frontier purchased substantially all of Cone Solvents, Inc.'s tangible and intangible assets, including the name and logo. As payment, Frontier assumed most of the corporation's liabilities, including a $475,000 debt to Mr. Cone, Sr. It also hired Mr. Cone, Sr. as a consultant. And it agreed to offer employment to most of Cone Solvents, Inc.'s employees. In a separate transaction, the decedent transferred 12.5% of his membership interest in Frontier to Ms. Ligon.

A few months after the asset sale, the directors and shareholders of Cone Solvents, Inc. adopted and approved a liquidation plan.[1] Cone Solvents, Inc. voluntarily dissolved. *See* Tenn. Code Ann. § 48-24-103 (2019). And after distributing any remaining assets to the three shareholders, it filed articles of termination on September 17, 2011. *See id.* § 48-24-108(a) (2019). All company stock was cancelled or redeemed.

Meanwhile, Frontier added chemical distribution to its existing trucking business. Frontier's chemical division operated under the Cone Solvents, Inc. name and logo. In 2010, Frontier reported combined annual sales of over $18 million. At the time of his death, the decedent owned a 72.5% membership interest in Frontier, as well as full governance rights.

B.

The probate court granted partial summary judgment to the decedent's widow, concluding that the bequest to Ms. Ligon had been adeemed by extinction.[2] In his will, the decedent devised his ownership interest in Cone Solvents, Inc. to his sister. This was a specific bequest. But the decedent had no ownership interest in Cone Solvents, Inc. when he died. Frontier had purchased the corporate assets in 2010 and, shortly thereafter, the corporation dissolved and terminated. The court rejected Ms. Ligon's argument that

---

[1] The decedent was both a director and a shareholder.
[2] The widow's request to remove the estate administrator remained pending.

Frontier's continuing use of Cone Solvents, Inc.'s assets showed that the decedent still had a devisable interest in the business. Because Frontier was a separate, ongoing, viable entity for at least four years before the sale, the decedent's interest in Frontier could not be deemed equivalent to his previous interest in Cone Solvents, Inc.

Ms. Ligon filed a motion to alter or amend. *See* Tenn. R. Civ. P. 54.02. Among other things, she asked the court to reconsider its ruling in light of a valuation report prepared by the decedent's estate. The report showed that Frontier kept separate accounting records for the chemical distribution business. She believed that this evidence bolstered her argument that the decedent still owned some interest in Cone Solvents, Inc. And she claimed that she did not discover the report's existence until after the summary judgment hearing.

The court declined to revise its original ruling based on the valuation report. The court questioned Ms. Ligon's failure to produce this evidence earlier. Information about the report, including selected excerpts, had been available in the court record since well before the summary judgment hearing. Even so, the court determined that the proffered evidence did not create a genuine issue of disputed material fact. So the motion did "not present a plausible basis to alter, amend or revise the summary judgment ruling." But the court agreed to certify its previous order as final.

## II.

### A.

Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* 56.04. The party moving for summary judgment has "the burden of persuading the court that no genuine and material factual issues exist and that it is, therefore, entitled to judgment as a matter of law." *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993).

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). We review the summary judgment decision as a question of law. *See Martin*, 271 S.W.3d at 84; *Blair*, 130 S.W.3d at 763. So we review the record de novo and make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been met. *See Eadie v. Complete Co.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair*, 130 S.W.3d at 763. We view all of the evidence in the light most favorable to the nonmoving party, including resolving all inferences to be drawn from the facts in that party's favor. *See Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999); *Muhlheim v. Knox Cty. Bd. of Educ.*, 2 S.W.3d

3

927, 929 (Tenn. 1999). If the undisputed facts support only one conclusion and that conclusion entitles the moving party to a judgment, then the trial court's grant of summary judgment is affirmed. *See White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).

The dispositive issue on appeal is whether the decedent's bequest to Ms. Ligon was adeemed by extinction.[3] Ademption is also question of law, which we review de novo. *In re Estate of Hume*, 984 S.W.2d 602, 604 (Tenn. 1999).

## B.

In construing a will, "the intention of the testator is of paramount importance." *Sands v. Fly*, 292 S.W.2d 706, 710 (Tenn. 1956). We must give effect to that intent "unless prohibited by a rule of law or public policy." *In re Estate of McFarland*, 167 S.W.3d 299, 302 (Tenn. 2005). The testator's intent is "determined from the particular words used in the will itself, and not from what it is supposed the testator intended." *In re Estate of Milam*, 181 S.W.3d 344, 353 (Tenn. Ct. App. 2005) (citations omitted); *see In re Estate of McFarland*, 167 S.W.3d at 302; *Stickley v. Carmichael*, 850 S.W.2d 127, 132 (Tenn. 1992).

We read the testator's words in context and in light of the will's purpose and the circumstances surrounding its execution. *See Stickley*, 850 S.W.2d at 132; *Bell v. Shannon*, 367 S.W.2d 761, 766 (Tenn. 1963). We also bear in mind that a will speaks and takes effect as if it had been executed immediately before the death of the testator unless a contrary intent is expressed in the will. *See* Tenn. Code Ann. § 32-3-101 (2021); *Daugherty v. Daugherty*, 784 S.W.2d 650, 656 (Tenn. 1990); *Bell*, 367 S.W.2d at 766. Absent a contrary intent, we will construe a will as including all property owned by the testator at the time of death.[4] *See Cobb v. Stewart*, 463 S.W.2d 693, 696 (Tenn. 1971); *Sadow v. Solomon*, 319 S.W.2d 83, 85 (Tenn. 1958).

---

[3] Ms. Ligon also challenges the court's decision on her post-judgment motion. The court did not abuse its discretion in denying relief. *See Harris v. Chern*, 33 S.W.3d 741, 746 (Tenn. 2000). Ms. Ligon did not come forward with any evidence suggesting that the decedent had an ownership interest in Cone Solvents, Inc. when he died. *See Byrd*, 847 S.W.2d at 211 (explaining that only a genuine dispute as to a material fact precludes the grant of summary judgment).

[4] By statute,

> A will shall be construed, in reference to the real and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator, and shall convey all the real estate belonging to the testator, or in which the testator had any interest at the testator's decease, unless a contrary intention appear[s] by its words in context.

Tenn. Code Ann. § 32-3-101. The statute "was enacted to alter the unyielding common-law rule that a will . . . spoke as of the time of its execution, and . . . property acquired by the testator after the execution of the will could not pass thereby." *Daughtery*, 784 S.W.2d at 656 (citations omitted). It does not otherwise alter

4

Ademption by extinction occurs when some action taken during the decedent's lifetime "interferes with the operation of the will." *In re Estate of Hume*, 984 S.W.2d at 604 (quoting *Am. Tr. & Banking Co. v. Balfour*, 198 S.W. 70, 71 (Tenn. 1917)). If the subject of a specific bequest has been "annihilated or its condition so altered that nothing remains to which the terms of the bequest can apply," the bequest has been adeemed by extinction. *Id.* (quoting *Wiggins v. Cheatham*, 225 S.W. 1040, 1041 (Tenn. 1920)).

Tennessee courts apply a strict "in specie" test in ademption by extinction cases.[5] *Id.* at 604-05. Thus, our analysis depends solely on the answers to two questions. Is the gift to Ms. Ligon a specific legacy? If so, can it be found in the decedent's estate? *See id.* at 605 (quoting *McGee v. McGee,* 413 A.2d 72, 76 (R.I. 1980)).

Here, the decedent bequeathed "any interest I may own at the time of my death in Cone Solvents, Inc. to my sister, SUSAN CONE [LIGON], outright and free of trust, if she is then living." Both parties agree that this gift is a specific legacy. "A 'specific legacy' is a bequest of a specific article or particular fund or designated part of the testator's estate, distinguished from all others of the same nature." *Ford v. Cottrell*, 207 S.W. 734, 736 (Tenn. 1918) (quoting *Am. Tr. & Banking Co.*, 198 S.W. at 71).

Ms. Ligon challenges the trial court's ruling that the subject of this gift was stock. She points out that the will uses the words, "any interest," rather than the specific term "stock." Still, when read in context and in light of the surrounding circumstances, there is no ambiguity. *See Stickley*, 850 S.W.2d at 132. The decedent intended to convey his interest in Cone Solvents, Inc. And his only personal interest was stock. *See Hinton v. Carney*, 250 S.W.2d 364, 366 (Tenn. 1952). Stock is personal property that passes to the owner's estate upon death. *Id.*

Turning to the second question, we conclude that this specific legacy cannot be found in the decedent's estate. The decedent did not own any stock in Cone Solvents, Inc. when he died. The corporation did not exist. *See* Tenn. Code Ann. § 48-24-108(b). And all outstanding stock had been cancelled or redeemed. The subject of this gift "ceased to exist in the form in which it is described in the will so that on his death there is nothing answering the description to be given to the beneficiary." *Ford*, 207 S.W. at 736 (citation omitted).

---

our traditional rules for ascertaining a testator's intent. *See Stickley*, 850 S.W.2d at 132; *Estate of Robison v. Carter*, 701 S.W.2d 218, 221 (Tenn. Ct. App. 1985).

[5] Ms. Ligon suggests that the ademption by extinction analysis in *In re Estate of Hume*, 984 S.W.2d 602 (Tenn. 1999), is flawed. But we are not at liberty "to disregard decisions of the Tennessee Supreme Court." *In re Estate of Greenamyre*, 219 S.W.3d 877, 883 (Tenn. Ct. App. 2005). The ademption principles stated in *In re Estate of Hume* control our analysis here. *See Stewart v. Sewell*, 215 S.W.3d 815, 824-25 (Tenn. 2007) (reaffirming *In re Estate of Hume*).

According to Ms. Ligon, our courts have recognized that mere changes in the name or form of a business entity will not cause an ademption by extinction. *See Baldwin v. Davidson*, 267 S.W.2d 756, 759 (Tenn. Ct. App. 1954). In *Baldwin*, the subject of the gift was the testator's "share" in a filling station business. *Id.* at 756. When the testator wrote his holographic will, the business was operated as a general partnership. *Id.* Before the testator died, "the partners organized a corporation [with a similar name] and transferred the partnership property and business to the corporation in exchange for shares of stock in it." *Id.* At his death, the testator still owned his stock. *Id.* at 757. There was no ademption by extinction because "[t]here was no change in the substance or essential nature of [the testator's] share or interest in the business." *Id.* at 759. His stock represented his "interest in the corporate business, which in turn represent[ed] his share in the partnership." *Id.*

Contrary to the facts presented in the *Baldwin* case, Cone Solvents, Inc. did not merely change name or form. Its assets were sold to another—already existing—business. Frontier had been a viable trucking business for almost four years before the asset purchase. More importantly, Frontier was the buyer, not the decedent. "All property transferred to or acquired by an LLC is property of the LLC." Tenn. Code Ann. § 48-249-502(a) (2019). After the asset purchase, the decedent's interest in Cone Solvents, Inc. profoundly changed. He no longer had an ownership interest in his former company. He owned a membership interest in Frontier. *See id.* ("A membership interest in an LLC is personal property. A member has no interest in specific LLC property."). So whether the business of Cone Solvents, Inc. continued as part of Frontier is irrelevant to our analysis.

This case is analogous to our decision in *Akins v. Clark*, 59 S.W.3d 124 (Tenn. Ct. App. 2001). The testator bequeathed specific assets to a close friend. *Id.* at 125. In an ill-fated attempt to avoid estate taxes, the testator transferred these same assets to a limited partnership. *Id.* at 126. When she died, the testator owned "a 1% interest in the Limited Partnership as a general partner and a 90.5% interest as a limited partner." *Id.* The testator did not have the right to demand distributions from the limited partnership. *Id.* We held that the transfer of the devised assets to the limited partnership "materially altered the nature of those assets such that it resulted in an ademption by extinction." *Id.* at 127. After the transfer, the testator "no longer owned the [assets], but rather owned a 91.5% interest in the Limited Partnership." *Id.*

Like the testator in *Akins v. Clark*, the decedent did not have an ownership interest in Cone Solvents, Inc. at his death. He held a membership interest in Frontier, a separate legal entity. "[A] testator can not dispose of property which he does not own at the time of his death." *Sadow*, 319 S.W.2d at 85. So we conclude that the specific gift to Ms. Ligon was adeemed by extinction.

## III.

Based on the undisputed facts, the decedent's widow was entitled to a partial summary judgment as a matter of law.  So we affirm.

_s/ W. Neal McBrayer_
W. NEAL MCBRAYER, JUDGE
